**FULBRIGHT & JAWORSKI, Plaintiff,**

v.

**DEPARTMENT OF the TREASURY, et al., Defendants.**

Civ. A. No. 81–2283.

United States District Court,
District of Columbia.

May 28, 1982.

0

Stephen F. Vogel, Washington, D. C., J. Todd Shields, Houston, Tex., for plaintiff.

Michael J. Salem, Dept. of Justice, Tax Div., Washington, D. C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

Plaintiff seeks access under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.* (1976), to records of the Department of Treasury (DOT) and Internal Revenue Service (IRS) pertaining to Revenue Ruling, 79–152, 1979–1 C.B. 237, the relationship of Section 877 of the Internal Revenue Code of 1954, as amended, to income tax treaties containing a 'savings clause,' and the protocol signed November 24, 1978, United States—France Income Tax Treaty. Eight of the documents defendants identified remain in dispute. These documents were submitted to the Court for *in camera* inspection. Defendants also filed a Vaughn Index. A hearing was held on May 26, 1982 at which counsel vigorously argued about the disclosure of each document. Defendants claim each of the documents falls within the deliberative process privilege of Exemption 5, 5 U.S.C. § 552(b)(5) and that Document No. 3 is protected also by Exemption b(1), 5 U.S.C. § 552(b)(1).

The basic policy of FOIA is to promote disclosure. Disclosure is mandatory unless a document falls within one of nine narrow exemptions. *EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Under exemption 5 of the FOIA an agency may withhold

> inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. 5 U.S.C. § 552(b)(5).

One of the three traditional privileges invoked under Exemption 5 is the deliberative process privilege.

The deliberative process privilege exempts materials that are "predecisional" and "deliberative," but requires disclosure of policy statements and final opinions "that have the force of law or explain actions that an agency has already taken." *Taxation with Representation Fund v. IRS,* 646 F.2d 666, 677 (D.C.Cir.1981) (hereinafter *Taxation with Representation* ). To be "predecisional" a document must be generated before the adoption of an agency policy. To be "deliberative" it must reflect the give-and-take of the consultative process. *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980) (hereinafter *Coastal States* ).

The basic policies underlying this exemption are threefold:

> to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or

criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action. *Coastal States, supra,* 617 F.2d at 866. In essence, under the deliberative process privilege, the "working law" of an agency must be disclosed, while opinions which are advisory, consultative and part of the agency's internal debate prior to a decision are protected. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151–54, 95 S.Ct. 1504, 1517, 44 L.Ed.2d 29 (1974).

■ *Document Nos. 1 and 2*: The documents in dispute can be divided into four groups, the first of which contains Document Nos. 1 and 2. Document No. 1 is four pages of a seventeen-page memorandum and cover page sent by A. J. Rothkopt, Tax Legislative Counsel, to nine individuals at DOT and IRS on November 19, 1964. The four excised pages are the only ones which contain information responsive to plaintiff's request. The other pages have been properly withheld as non-responsive. The memorandum is a "present thoughts" outline of several individuals at DOT regarding the Fowler Task Force recommendations.[1] The authors comment on these recommendations and make further proposals themselves. The memorandum served as a basis for discussion of the Fowler Task Force recommendations, and itself was subject to further discussion on November 24, 1964.

Document No. 2 is a one-page memorandum dated December 9, 1964 from Stanley Surrey, Assistant Secretary, DOT, to G. Griffith Johnson, Assistant Secretary for Economic Affairs, Department of State (DOS). It was released in part. Only portions assessing the U. S. position in treaty negotiations are being withheld. This memorandum solicits the comments of the DOS on certain elements of the Fowler Task Force recommendations.

Document No. 1 and the portions of Document No. 2 withheld reflect the give-and-take of the discussions concerning the adoption of the Fowler Task Force recommendations. They evaluate these recommendations for their effect, *inter alia*, on foreign policy and treaty negotiations and make further proposals. As such, they are predecisional and deliberative. Analysis and recommendations do not constitute agency "working law" or final policy. Document Nos. 1 and 2 (the portion withheld) therefore fall within the deliberative process privilege.

Plaintiff argues that the age of these documents makes their withholding arbitrary and capricious under 31 C.F.R. § 1.2. Even though they were written in 1964, the Court agrees with the government that their release could have a possible adverse effect on the process of evaluating proposed legislation. In addition, the Court notes that both documents were marked administratively confidential. Accordingly, the Court finds that Document No. 1 and the portion of Document No. 2 in dispute were properly withheld.

*Document No. 3*: Document No. 3 is a confidential study consisting of an article-by-article review of the U. S. Model Treaty dated February 28, 1977. The portions of the study in dispute are the discussions of the personal scope and the savings clause provisions. With respect to each of these provisions the study states: its function in the treaty, the U. S. interest in having it, a comparison with OECD provisions, and further comments, some of which refer to other treaties. The study therefore sets out the U. S. negotiating positions and goals in the course of the negotiation of income tax treaties. It presently is used in various and continuing negotiations.

Defendants have claimed Exemption 1, 5 U.S.C. § 552(b)(1), for this document which provides an exemption for matters that are:

---

1. The Fowler Task Force was appointed by President Kennedy in 1963 to find methods to encourage nonresident aliens to invest in U. S. corporate securities. It submitted its recommendations to President Kennedy on April 27, 1964.

(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of ... foreign policy and (B) are in fact properly classified pursuant to such Executive Order.

■ Document No. 3 was classified "Confidential" in 1977 pursuant to Executive Order 11652. Executive Order 12065 supplanted Executive Order 11652 in 1978. Plaintiff argues that Document No. 3 is not classified properly and should be reclassified under the current Executive Order, E.O. 12065, before this Court decides the validity of the Exemption 1 claim.

This issue was addressed specifically in *Lesar v. United States Department of Justice,* 636 F.2d 472, 479–80 (D.C.Cir.1980). *Lesar* held that "the Executive Order in effect at the time the classifying official acted states the relevant criteria for purposes of determining whether Exemption 1 properly was invoked." *Id.* at 480. The Court of Appeals further stated that when an agency receives a FOIA request it "may wish to reevaluate its initial classification decision to determine whether the materials requested require declassification or reclassification at a higher level, if circumstances so dictate." *Id.*[2] The Court of Appeals, however, did not require an agency to do so. Indeed, such a requirement would place a heavy administrative burden on agencies. *Id.* Document No. 3 was classified last in 1977 under Executive Order 11652. Therefore, this Court must determine the validity of the Exemption 1 claim under the standards set forth in Executive Order 11652.

Executive Order 11652 provides in Section 1 that:

Official information or material which requires protection against unauthorized disclosure in the interest of the national defense * * * of the United States (hereinafter collectively referred to as "national security") shall be classified in one of three categories, namely, "Top Secret," "Secret," or "Confidential," depending upon the degree of its significance to national security. These classification categories are defined as follows: * * *

(C) "Confidential." "Confidential" refers to that national security information or material which requires protection. The test for assigning "Confidential" classification shall be whether its authorized disclosure could reasonably be expected to cause damage to the national security. 3 C.F.R. 376 (1973).

■ The standard to apply in conducting a *de novo* review of DOT's classification decision is therefore whether disclosure of the materials reasonably could be expected to cause the requisite harm. *Lesar, supra,* 636 F.2d at 481. Disclosure of Document No. 3 would probably undermine the ability of U. S. negotiators to obtain desirable results in treaty negotiations because the document so clearly sets forth the U. S. goals, rationales and past experiences. While the treaties which the U. S. has signed with other nations are available to the public and provide some idea of U. S. goals, they do not state them as explicitly. An analysis of these treaties would still leave one with questions about the U. S. priorities and its strategy for handling them. Tax treaty negotiations are closely tied to foreign affairs and are frequently the subject of linkage with other treaty matters. Therefore, disclosure of Document No. 3 reasonably could be expected to harm the national security of the United States. The Court concludes that Document No. 3 is properly classified pursuant to Executive Order 11652, and that it is properly kept secret in the interest of foreign policy. The Court has examined Document No. 3 and finds no reasonably segregable factual segments. Accordingly, the Court holds Document No. 3 is exempt in full.

■ *Document Nos. 4, 6 and 7:* Document Nos. 4, 6 and 7 are the notes which Marcia Field, an International Economist on the U. S. tax treaty negotiating team made, during the U. S.—French negotia-

---

**2.** The Court notes that if a document is reevaluated, the schedules and procedures for declassification in effect under the current Executive Order are controlling. *Lesar, supra,* 636 F.2d at 480.

tions. The U. S. and France met several times in 1977. At each session, Ms. Field would take notes which she would later type up and amplify. The notes were taken to aid in future negotiations. They therefore do not contain a minute by minute report of what occurred at the meeting, but rather reflect Ms. Field's view on what the important issues of each negotiations session were. Examples of the points she noted are: the issues to be discussed, positions which the French and U. S. teams took on some points, draft language agreed to and articles which needed to be amended.

Negotiations between two countries to draft a treaty represent a true example of a deliberative process. Much give-and-take must occur for the countries to reach an accord. A description of the negotiations at any one point would not provide an onlooker a summary of the discussions which could later be relied on as law. It would not be "working law" as the points discussed and positions agreed on would be subject to change at any date until the treaty was signed by the President and ratified by the Senate.

The policies behind the deliberative process privilege support non-disclosure. Much harm could accrue to the negotiations process if these notes were revealed. Exposure of the pre-agreement positions of the French negotiators might well offend foreign governments and would lead to less candor by the U. S. in recording the events of the negotiations process. As several months pass in between negotiations, this lack of record could hinder readily the U. S. negotiating team. Further disclosure would reveal prematurely adopted policies. If these policies should be changed, public confusion would result easily.

■ Finally, releasing these snapshot views of the negotiations would be comparable to releasing drafts of the treaty, particularly when the notes state the tentative provisions and language agreed on. As drafts of regulations typically are protected by the deliberative process privilege, *Arthur Andersen & Co. v. Internal Revenue Service*, C.A. No. 80–705 (D.C.Cir., May 21, 1982), drafts of treaties should be accorded the same protection.

■ Plaintiff argues that there are segregable factual segments which should be disclosed. Facts in a pre-decisional document must be disclosed unless they are "inextricably intertwined" with the exempt portion. *Ryan v. Dept. of Justice*, 617 F.2d 781, 790–91 (D.C.Cir.1980). The facts contained in Document Nos. 4, 6 and 7, however, have been selected out by Ms. Field in such a way that their disclosure would reflect the deliberative process described above. *Montrose Chemical Corp. v. Train*, 491 F.2d 63 (D.C.Cir.1974). Accordingly, the Court holds that Document Nos. 4, 6 and 7 are protected by the deliberative process privilege.

*Document Nos. 5 and 8* : Document Nos. 5 and 8 are correspondence in August and October of 1978 between Anthony Bonanno, Assistant Chief of the Legislation and Regulation Division, Office of the Chief Counsel for the IRS, and H. David Rosenbloom, International Tax Counsel, DOT, regarding the meaning of Section 877 of the Internal Revenue Code, 26 U.S.C. § 877. Document No. 5 is Mr. Bonanno's response to Mr. Rosenbloom's request for a statement of rules of taxation under Section 877 to give to other countries in treaty negotiations. It consists of a memorandum and an attachment. In the memorandum Mr. Bonanno states the Section 877 rules and then discusses treaty negotiations between the U. S. and two other countries. The attachment contains further description of Section 877 and compares it to the U. S. Model Income Tax Convention.

Document No. 8 consists of two memoranda. The first is a one-page memorandum written by Mr. Rosenbloom to the file. It states the "opinion of this office" on a particular issue involving Section 877. The second is a two-page memorandum from Mr. Bonanno to Mr. Rosenbloom concerning a Section 877 case docketed before the Tax Court. It sets out Mr. Bonanno's opinion regarding whether a Swiss expatriate is exempt from U. S. source royalties under a specific fact pattern.

 Mr. Bonanno is a third-level supervisor in the office of the Chief Counsel for the IRS, while Mr. Rosenbloom, as the International Tax Counsel, has authority to state and make agency policy. Therefore, the communications from Mr. Bonanno to Mr. Rosenbloom flow up the ladder of authority. As such, any opinions expressed or advice given by Mr. Bonanno are part of the deliberative process unless they are adopted specifically by the agency. *Taxation with Representation, supra,* 646 F.2d at 683. The memorandum from Mr. Bonanno to Mr. Rosenbloom in Document No. 8 contains only Mr. Bonanno's opinion about Section 877. There is no indication it was adopted by DOT or IRS. Accordingly, it is exempt.

On the other hand, Document No. 5 contains Mr. Bonanno's recitation of existing Section 877 law, not his opinion. As a statement of agency law, it is not privileged under FOIA Exemption 5. The Court, accordingly, releases Document No. 5 with two exceptions. Paragraph 2, page 1, of the memorandum is exempt because it refers to a possible disagreement between Mr. Rosenbloom and Mr. Bonanno's office. It is not a clear statement of law or policy. In addition, Mr. Bonanno's discussion of the U. S. treaties with other countries is exempt. It speaks of hypothetical situations and proposals and therefore also does not constitute a statement of policy or law.[3]

 Mr. Rosenbloom's memorandum to his file in Document No. 8 is written in an authoritative manner and specifically states that it gives the "opinion of this office," not Mr. Rosenbloom's opinion. Further, it is written by an individual at the top of the chain of command. Defendants have not carried their burden of proof to show that it is part of a deliberative process. Accordingly, the Court finds this memorandum is a final statement of agency "working law" and orders it released.

This case is dismissed. An appropriate order is attached.

## ORDER AND JUDGMENT

Upon consideration of the Vaughn Index filed by defendants, the Court's *in camera* inspection of the documents, the oral motions for summary judgment presented by counsel at the May 26, 1982 hearing and the entire record herein, for the reasons set forth in the accompanying memorandum opinion, it is by the Court this 28th day of May 1982,

ORDERED that defendants' motion is granted in part and denied in part; it is further

ORDERED that plaintiff's motion is granted in part and denied in part; it is further

ORDERED that Document Nos. 1, 3, 4, 6 and 7 are withheld properly in full; it is further

ORDERED that paragraphs 2 and 4 of Document No. 2 are withheld properly; it is further

ORDERED that Document No. 5 must be disclosed except for the following paragraphs which are withheld properly: paragraph 2 on page 1, paragraph 2 and the two footnotes on page 2, and page 3 of the memorandum; it is further

ORDERED that in Document No. 8 Mr. Rosenbloom's memorandum to file must be disclosed and that Mr. Bonanno's memorandum to Mr. Rosenbloom is withheld properly; and it is further

ORDERED that this case is dismissed.

---

**3.** Specifically, the Court finds paragraph 2 and the two accompanying footnotes on page 2 and all of page 3 of the memorandum are exempt.