**CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW, et al., Plaintiffs,**

v.

**OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, et al., Defendants.**

**No. Civ.A. 01–2350PLF.**

United States District Court, District of Columbia.

Dec. 19, 2002.

John Martin Wagner, Oakland, CA, for Plaintiffs.

Joshua Z. Rabinovitz, U.S. Department of Justice Civil Division, Washington, DC, Anne L. Weismann, U.S. Department of Justice Civil Division, Washington, DC, for Defendants.

## OPINION

FRIEDMAN, District Judge.

On November 9, 2001, plaintiffs Center for International Environmental Law, Friends of the Earth and Public Citizen, three non-profit groups that monitor international trade and environmental issues, filed suit under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, against the Office of the United States Trade Representative ("USTR") and Robert B. Zoellick, in his official capacity as the United States Trade Representative.[1] Plaintiffs seek to obtain information relating to the just-completed negotiation of a United States–Chile Free Trade Agreement, specifically documents that were produced by or exchanged with Chile or that relate to communications or meetings with Chile.

This matter is before the Court on cross motions for summary judgment. For the reasons stated below, the Court grants in part and denies in part both plaintiffs' motion for summary judgment and defendants' motion for summary judgment. Because the Court concludes that documents exchanged with the government of Chile are not "inter-agency" documents under Exemption 5 of the Freedom of Information Act, the Court directs USTR to release these documents to plaintiffs. It also directs USTR to identify and release any internal USTR documents that contain factual information relating to meetings or communications with Chilean officials. The Court concludes that documents withheld by USTR pursuant to Exemption 1 were properly withheld and need not be released. Finally, the Court concludes that defendants have not waived their right to assert privileges by publicly disclosing information similar to that contained in withheld documents.

## I. BACKGROUND

In November of 2000, United States President William Jefferson Clinton and

---

1. Defendants assert that Section 522(a)(4)(B) of the Freedom of Information Act precludes suit against individuals in their official capacities, thus requiring the dismissal of Mr. Zoellick. *See* Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment at 2 n.1. Because the Court finds no case law supporting this proposition, it will not dismiss Mr. Zoellick as a defendant.

Chilean President Ricardo Lagos announced that their respective governments would begin work toward a bilateral free trade agreement. The Office of the United States Trade Representative spearheaded the negotiations for the United States. On June 29, 2001, plaintiffs filed a Freedom of Information Act request with USTR asking for "[a]ll records containing either U.S. positions shared with Chile, or Chilean positions shared with the United States, at any in-person meeting or in any other manner" as well as "[a]ll records prepared ... during the inter-agency and/or intra-agency processes of the U.S. government coming to positions reflected in the records referred to above." Plaintiffs' Motion for Summary Judgment ("Pl. Mot."), Exhibit 1, Letter from Scott Pasternack, Earthjustice Legal Defense Fund, to Sybia Harrison, FOIA Officer, USTR, dated June 29, 2001 at 1.

In response to plaintiffs' request, USTR conducted a hard-copy and electronic search for all documents relating to the U.S.-Chile Free Trade Agreement negotiations, completing its initial search in early 2002. USTR's initial search, the adequacy of which plaintiffs do not challenge, identified 214 responsive documents, of which nine were released in full and 90 were released in part. Defendants subsequently located an additional 66 documents and released one of these in full, raising the total number of responsive documents to 280, of which a total of 270 were withheld in whole or in part. Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment at 2 n.1 ("Def.Mem."), Exhibit 1, Declaration of Sy-

bia Harrison at ¶¶ 8–10; Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and Reply in Further Support of Defendants' Motion for Summary Judgment ("Def.Opp."), Exhibit 1, Supplemental Declaration of Susan P. Cronin at ¶¶ 5–6. Plaintiffs have conceded that defendants properly withheld one of these documents (No. 110) pursuant to Exemption 4, but seek the release of the remaining 269 documents (or reasonably segregable portions thereof) in this action.

The 269 documents in question can be grouped into three categories: (1) documents exchanged between the United States and Chile (131); (2) internal United States documents that describe meetings with Chilean negotiators or proposals received from Chilean officials (156); and (3) classified documents created by or for the Trade Policy Review Group, an inter-agency group of senior officials that considers and determines United States trade policy (5).[2] To justify withholding the documents in the first two categories, USTR relies on Exemption 5 of the FOIA, which protects from disclosure any "inter-agency" or "intra-agency" documents that reveal an agency's deliberative process. 5 U.S.C. § 522(b)(5). Plaintiffs contest all claims of Exemption 5 privilege, both with respect to documents that were exchanged between Chile and the United States and with respect to internal documents that describe meetings with or proposals from Chilean officials. The parties have agreed on the identity of all documents exchanged with Chile. *See* Defendants' Report on Documents Exchanged Between the United States and Chile at ¶ 4.[3]

---

**2.** Because many of these documents contain multiple parts (*e.g.*, e-mails with multiple documents attached), the categories are not mutually exclusive and 23 of the documents fall into multiple categories. *See* Defendants' Report on Documents Exchanged Between the United States and Chile ¶ 3; *see also infra* n.

3. As a result, the sum of the number of documents in each category exceeds the total number of documents withheld by USTR.

**3.** The complete set of documents shared between the United States and Chile in conjunction with the Free Trade Agreement negotia-

Plaintiffs also challenge USTR's withholding of five documents under Exemption 1 of the FOIA, which exempts from disclosure any documents that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order; . . . ." 5 U.S.C. § 552(b)(1)(A). In addition, plaintiffs assert that defendants have waived the right to assert any privilege with respect to certain documents by publicly releasing information similar to that contained in the documents. Based on these arguments, plaintiffs seek declaratory and injunctive relief, including the release, in full or in part, of 269 documents withheld by USTR, as well as the identification and release of any additional relevant documents not yet identified by USTR.

## II. DISCUSSION

### A. The Freedom of Information Act

■ The fundamental purpose of the Freedom of Information Act is to assist citizens in discovering "what their government is up to." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). As such, "the Act is broadly conceived," *EPA v. Mink*, 410 U.S. 73, 79–80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), and "disclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *see also NLRB v. Robbins Tire &*

*Rubber Co.*, 437 U.S. 214, 220, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). The FOIA requires public disclosure of agency records unless the requested records fall within one or more of nine carefully-structured statutory exemptions. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. at 220, 98 S.Ct. 2311; *Burka v. United States Dep't of Health and Human Serv.*, 87 F.3d 508, 515 (D.C.Cir.1996); *Oglesby v. United States Dep't of the Army*, 79 F.3d 1172, 1176 (D.C.Cir.1996). Consistent with the Act's "goal of broad disclosure, these exemptions have been consistently given a narrow compass," *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989), and the agency bears the burden of justifying the withholding. The court determines *de novo* whether the exemption claimed is appropriate. *See* 5 U.S.C. § 552(a)(4)(B); *Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991).

■ In assessing a claimed exemption, a court will require the agency to provide a "[r]elatively detailed justification" through the submission of an index of documents, known as a *Vaughn* Index, sufficiently detailed affidavits or declarations, or both. *Mead Data Central, Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 251 (D.C.Cir.1977); *see Oglesby v. United States Dep't of the Army*, 79 F.3d at 1178; *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Furthermore, the FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt

---

tions consists of documents 9, 15, 16, 19, 22, 23, 27–29, 36, 52, 57, 89–94, 97, 99, 111, 124, 130, 134, 141, 142, 145–149, 152–162, 164–167, 169–173, 176, 177, 180–191 and 215–280. *See* Defendants' Report on Documents Exchanged Between the United States and Chile at ¶ 2. As noted above, however, 23 of

these documents contain both material that was exchanged with Chile and material that was not exchanged. These overlapping documents are: documents 22, 36, 130, 152, 153, 155, 156, 160–162, 164–166, 169–172, 176, 177, 182–185. *See id.* at ¶ 3.

under this subsection." 5 U.S.C. § 552(b). This comports with the policy of disclosure and prevents the withholding of entire documents, *see Billington v. Dep't of Justice*, 233 F.3d 581, 586 (D.C.Cir.2000), unless the agency can demonstrate that the non-exempt portions of a document are "inextricably intertwined with exempt portions." *Trans–Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1027 (D.C.Cir.1999) (quoting *Mead Data Central, Inc. v. United States Dep't of the Air Force*, 566 F.2d at 260).

▮▮▮ The Court may award summary judgment to a government agency solely on the basis of information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981); *see also Vaughn v. Rosen,* 484 F.2d at 826–28. An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA,* 607 F.2d 339, 352

(D.C.Cir.1978) (internal citation and quotation omitted).

### B. Analysis

For the reasons stated below, the Court concludes that all documents withheld by USTR under Exemption 5 were improperly withheld, while the five documents withheld pursuant to Exemption 1 were properly withheld. The Court further finds that defendants have not waived their right to claim exemptions by releasing similar but not identical information to private individuals.[4]

#### 1. *Exemption 5*

▮▮▮ Exemption 5 excludes from disclosure any documents that are "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. 552(b)(5). This provision protects from disclosure those documents traditionally afforded protection "pursuant to evidentiary privileges in the civil discovery context," including those covered by the deliberative process privilege. *Dow Jones & Co. v. Dep't of Justice,* 917 F.2d 571, 573 (D.C.Cir.1990) (quoting *Formaldehyde Inst. v. Dep't of Health and Human Serv.,* 889 F.2d 1118, 1121 (D.C.Cir.1989) (internal quotation marks omitted). In keeping with the FOIA's goal of broad disclosure, the Section 552(b)(5) exemption is construed narrowly. *Dep't of the Interior v. Klamath*

---

4. Plaintiffs also claim that USTR has failed to identify communications or information shared with Chile in sufficient detail to permit judicial review of USTR's compliance with an order requiring the release of such information. *See* Plaintiffs' Memorandum of Points and Authorities In Opposition to Defendants' Motion for Summary Judgment and In Support of Plaintiffs' Motion for Summary Judgment at 30–31 ("Pl.Mem."). Upon review of defendants' revised Index of Documents and supporting declarations, however, the Court concludes that defendants have identified and

described in sufficient detail all documents containing information received from or exchanged with Chile. *See* Def. Opp., Exhibit 1, Supplemental Declaration of Susan P. Cronin at ¶¶ 5–6; Def. Opp., Exhibit 2, Revised Index of Documents; *see also Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C.Cir.1996) (FOIA requires only that an agency describe withheld documents in sufficient detail to demonstrate why they fall within the claimed exemption, which can be done through a *Vaughn* index of documents or through supporting affidavits or declarations).

*Water Users Protective Ass'n,* 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (*"Klamath Water Users"*).

■ The purpose of the deliberative process privilege is to encourage the frank discussion of policy issues among government officials and to protect the government's decisionmaking processes. *See Wolfe v. Dep't of Health & Human Serv.,* 839 F.2d 768, 773 (D.C.Cir.1988) (*en banc*) (quoting S.REP. NO. 813, 89th Cong., 1st Sess. 9 (1965)). Such protection is necessary to

> assure that subordinates within an agency will feel free to provide the decision-maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). *See also Klamath Water Users,* 532 U.S. at 8, 121 S.Ct. 1060, quoting *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (government officials "will not communicate candidly among themselves if each remark is a potential item of discovery and front page news"; the object of the deliberative process privilege is "to enhance 'the quality of agency decisions.'"); *Wolfe v. Dep't of Health & Human Serv.,* 839 F.2d at 773 ("[T]he quality of administrative decision-making would be seriously undermined if

agencies were forced to operate in a fish-bowl.").

■ In order to qualify for protection under the deliberative process privilege of Exemption 5, a document must satisfy two conditions: (1) it must be either inter-agency or intra-agency in nature,[5] *and* (2) it must be both predecisional and part of the agency's deliberative or decisionmaking process. *See Klamath Water Users,* 532 U.S. at 8–9, 121 S.Ct. 1060; *Dow Jones & Co. v. Dep't of Justice,* 917 F.2d at 574. Defendants argue that Exemption 5 applies to two categories of documents: those produced by or exchanged with Chile, and those that contain information concerning meetings with or proposals from Chilean officials. Plaintiffs challenge both applications of Exemption 5.

#### a. Documents Produced By or Exchanged With Chile

In support of their decision to withhold all documents or portions of documents produced by or shared with Chile during negotiations, defendants characterize the Chilean officials as allies of USTR, a government agency, in pursuit of a mutually beneficial agreement who thus qualify as outside consultants to the agency and whose communications therefore are protected as inter-agency under Exemption 5. *See* Def. Mem. at 23–25. Plaintiffs respond that Chile is not a consultant but rather is necessarily adverse to USTR in the context of trade negotiations; therefore communications between Chile and the United States are not protected. *See* Pl. Mem. at 6–7. Disclosure of the contested documents thus turns on the definitions of "consultant" and "inter-agency" under the statute and case law and raises an issue of first impression: Are communi-

---

**5.** For ease of discussion, the Court will use the term "inter-agency" to refer to both inter-

and intra-agency documents.

cations between the United States and a foreign government in the course of treaty negotiations "inter-agency" under Exemption 5 such that any shared documents are protected from disclosure?

■ For purposes of the inter-agency requirement, the Supreme Court has noted that the term " 'agency' means 'each authority of the Government of the United States,' § 551(1), and 'includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . ., or any independent regulatory agency,' § 522(f)." *Klamath Water Users*, 532 U.S. at 9, 121 S.Ct. 1060. In general, this definition establishes that communications between agencies and outside parties are not protected under Exemption 5. *See, e.g., Brownstein Zeidman & Schomer v. Dep't of the Air Force*, 781 F.Supp. 31, 35 (D.D.C.1991) ("While FOIA exemption 5 does protect intragovernmental deliberations, it does not cover negotiations between the government and outside parties."); *see also Mead Data Central, Inc. v. United States Dep't of the Air Force*, 566 F.2d at 257–58 (policy objectives of Exemption 5 not applicable to negotiations between agency and outside party). The terms "inter-agency and intra-agency," however, are not meant to be "rigidly exclusive terms." *Dow Jones & Co. v. Dep't of Justice*, 917 F.2d at 574 (quoting *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (1980)). The D.C. Circuit therefore has recognized that agencies often need "to rely on the opinions and recommendations of temporary consultants" and that "[s]uch consultations are an integral part of [the agency's] deliberative process." *Dow Jones & Co. v. Dep't of Justice*, 917 F.2d at 574–75.

This exception to the literal terms of the inter-agency requirement, recognized and

affirmed by the Supreme Court as "the consultant corollary to Exemption 5" in *Klamath Water Users*, is not without limits. 532 U.S. at 11, 121 S.Ct. 1060. *See County of Madison v. Dep't of Justice*, 641 F.2d 1036, 1040 (1st Cir.1981); *Center for Auto Safety v. Dep't of Justice*, 576 F.Supp. 739, 745–46 (D.D.C.1983). Communications with outside consultants have been deemed part of an agency's deliberative process only where the documents prepared by or communications to or from the outside consultants "played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done," or where "the consultant functions just as an [agency] employee would be expected to do." *Klamath Water Users*, 532 U.S. at 10, 11, 121 S.Ct. 1060; *see Public Citizen v. Dep't of Justice*, 111 F.3d 168, 170–71 (D.C.Cir.1997). In *Klamath Water Users*, the Supreme Court's only direct interpretation of the inter-agency requirement, the Court reiterated these limits, stating that an outside party is not an agency consultant where it represents its own interests "at the expense of others seeking benefits inadequate to satisfy everyone." *Klamath Water Users*, 532 U.S. at 12, 121 S.Ct. 1060. While not reaching the question of whether such independent interests *in and of themselves* always preclude an outside party's qualification as a consultant for Exemption 5 purposes, the Court found that self-advocacy at others' expense was preclusive: "[T]he dispositive point is that the apparent object of the Tribe's communications is a decision by an agency of the Government to support a claim by the Tribe that is necessarily adverse to the interests of competitors." *Id.* at 14, 121 S.Ct. 1060.

■ Here, defendants concede that Chile does not act as a neutral consultant to USTR but argue that the relationship

nonetheless is consultative and that any shared documents are inter-agency by virtue of the "co-regulatory" nature of bilateral free trade negotiations, where both parties seek to "create and implement a policy for their mutual benefit." Def. Mem. at 22. Defendants assert that the mutual advantage to be gained from the existence of a trade agreement between the United States and Chile demonstrates that the relationship is non-adversarial. They urge the Court to adopt a broad interpretation of the "outside consultant" exception to the inter-agency requirement and to protect any shared documents as "an integral part" of USTR's deliberative process. Def. Mem. at 19 (citing *Ryan v. Dep't of Justice*, 617 F.2d at 789).

The Court cannot accept defendants' characterization of Chile as a non-adversarial consultant to USTR. Chile is an independent party promoting its own interests, whose communications with USTR necessarily fall beyond the scope of Exemption 5. Despite the ultimate goal of cooperation between these two nations, Chilean negotiators undoubtedly approached the talks with their own best interests in mind, as any country must in such negotiations. Chile is an independent sovereign state and its participation in the development of a trade agreement with the United States, however mutually advantageous, cannot rightly be characterized as advice or consultation. Here, as in *County of Madison*, "[w]hile the [outside parties] came to parley, they were past and potential adversaries, not coopted colleagues." *County of Madison v. Dep't of Justice*, 641 F.2d at 1040. This Court agrees with the First Circuit's conclusion that "expanding exemption five to include self-seeking petitioners 'within' agencies would do more violence to statutory language than Congress' direction permits." *Id.; see also Center for Auto Safety v. Dep't of Justice*, 576 F.Supp. at 746–47 (documents received

from outside party were not "inter-agency" because they were "submitted by an adversary as part of an effort to convince the agency to adopt the adversary's proposals," and shared documents were not "inter-agency" because "when the [agency] elected to use them as tools in their [settlement] negotiations with the public [opposing parties in a lawsuit] . . . they lost their internal status, and their qualification for Exemption 5.").

Despite defendants' argument to the contrary, this conclusion finds support in the Supreme Court's recent discussion in *Klamath Water Users* of the nature and limits of the inter-agency requirement of Exemption 5. As explained above, the Court emphasized the importance of the inter-agency requirement, stating that "the first condition of Exemption 5 is no less important than the second; the communication must be 'inter-agency or intra-agency.'" 532 U.S. at 9, 121 S.Ct. 1060. In addition, while recognizing (without affirming or rejecting) the conclusions by some courts that certain documents prepared by outside consultants were "inter-agency" documents for purposes of Exemption 5 in some contexts, the Court noted a common factor in all such cases: "[T]he fact about the consultant that is constant in the typical cases is that the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it. Its only obligations are to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do." *Id.* at 10–11, 121 S.Ct. 1060; *see id.* at 12, 121 S.Ct. 1060 (typically, consultants whose communications have been held exempt "have not been communicating with the Government in their own interest or on behalf of any person or group whose interests might be affected by the Government

action addressed by the consultant."). That is manifestly not the situation presented here.

While the Court in *Klamath Water Users* emphasized that most outside parties who have been deemed consultants by the courts lacked independent interests of their own, *see* 532 U.S. at 11, 121 S.Ct. 1060, it stopped short of concluding that the pursuit of any independent interest by an outside party always precludes a finding that its communications are inter-agency. *See id.* at 10–11, 121 S.Ct. 1060 ("nor do we read the cases as necessarily assuming that an outside consultant must be devoid of a definite point of view when the agency contracts for its services"). The Court explicitly limited its holding: "While [the fact that the Tribe advocated its own interests] alone distinguishes tribal communications from the consultants' examples recognized by several Courts of Appeals, the distinction is even sharper, in that the Tribes are self-advocates at the expense of others seeking benefits inadequate to satisfy everyone.... [T]he dispositive point is that the apparent object of the Tribe's communications is a decision by the agency of the Government to support a claim by the Tribe that is necessarily adverse to the interests of competitors." *Id.* at 12, 14, 121 S.Ct. 1060.

The critical factor in deciding the inter-agency status of an outside party is the degree of self-interest pursued by that party, as compared to its interest in providing neutral advice or consultation to the agency. Where an outside party's self-interest predominates over its interest in

informing or assisting the agency, that party's communications cannot be considered inter-agency for purposes of Exemption 5. Here, it is not just that Chile was not "devoid of a definite point of view" (532 U.S. at 11, 121 S.Ct. 1060); it was an advocate for its own interests and not a provider of independent advice to the United States. Like the Tribes in *Klamath Water Users*, Chile "communicated with the [USTR] with [its] own, albeit entirely legitimate, interests in mind." *Klamath Water Users*, 532 U.S. at 12, 121 S.Ct. 1060. No matter what shared interests Chile and the United States may have with respect to free trade and the desirability of negotiating a free trade agreement, the interests of Chile are manifestly independent of those of the United States. The Court concludes that Chile's communications with USTR are not inter-agency communications for purposes of Exemption 5.

This conclusion is not inconsistent with the D.C. Circuit's decisions in *Public Citizen, Inc. v. Dep't of Justice* or *Ryan v. Dep't of Justice*.[6] In *Public Citizen*, former Presidents of the United States were consulted by the National Archives and Records Administration on the release of their presidential documents. Because any former President has an interest in protecting the confidentiality of documents produced during his tenure, the former Presidents undoubtedly had their own interests beyond an obligation to "truth and [a] sense of what good judgment calls for." *Klamath Water Users*, 532 U.S. at 11, 121 S.Ct. 1060. Nonetheless, because each

**6.** The Supreme Court in *Klamath Water Users* called into question but refused to decide the continuing validity of these two cases in which the court of appeals treated communications with outside parties as inter-agency despite the outside parties' independent interests. *See Klamath Water Users*, 532 U.S. at 12 n. 4, 121 S.Ct. 1060 (noting that both *Ryan v.*

*Dep't of Justice* 617 F.2d 781, and *Public Citizen v. Dep't of Justice*, 111 F.3d 168, "arguably extend beyond what we have characterized as the typical examples.") Because *Klamath Water Users* did not directly overrule these two cases, the Court finds it appropriate to address them, and it finds them distinguishable from the case at hand.

former President "clearly qualifies as an expert on the implications of disclosure of Presidential records from his administration," and because it may be assumed that a former President of the United States is not in an adversarial or potentially adversarial posture with the government he led—"[h]e retains aspects of his former role"—the former Presidents' input was held to fall within the consultant exception to the inter-agency requirement under Exemption 5. *See Public Citizen v. Dep't of Justice*, 111 F.3d at 170, 171. Chile possesses no analogous expertise or presumed loyalty. Furthermore, consultation between the National Archives Records Administration and the former Presidents was expressly mandated by statute. *See Public Citizen v. Dep't of Justice*, 111 F.3d at 170. Here, no such statutory mandate exists.

Contrary to defendants' assertion that *Public Citizen* supports their position that disclosure is prohibited in this case, that decision explicitly recognized that an outside party with a predominantly adversarial relationship would not enjoy the protection of Exemption 5. Acknowledging that there were non-consultative aspects to the relationship between the agency and the former Presidents, the Court noted that "[a]t some point of course, features of the other relationships (above all, a possible future adversary one) might come to eclipse the consultative relationship," but found that the plaintiff had failed to offer concrete evidence of such a shift. *Public Citizen v. Dep't of Justice*, 111 F.3d at 171. Because the government plausibly had described the relationship as aiming " 'to facilitate correct and consistent application of the Presidential Records Act' " and achieve other agency goals, the court found that the consultative· relationship predominated over the Presidents' self-interest. *Id.* The court expressly noted, however, that if the Presidents' independent interests were stronger, the adversarial features of the relationship might preclude application of Exemption 5. *See id.*

Unlike the former Presidents in *Public Citizen*, Chilean officials are not "enough like the agency's own personnel to justify calling their communications 'intra-agency.' " *Klamath Water Users*, 532 U.S. at 12, 121 S.Ct. 1060. Nor did the documents that Chile submitted to USTR play "essentially the same part in [the] agency's process of deliberation as documents prepared by agency personnel might have done." *Id.* at 11, 121 S.Ct. 1060. It may be true, as defendants assert, that Chilean proposals and responses are essential to USTR's development of its own negotiating positions, but the role played by such documents is unmistakably different from the role of internally created documents; Chile shares its positions not in order to advise or educate USTR but in order to promote its own interests. *See* Def. Mem. at 22 (acknowledging that "Chile seeks to achieve its own objectives through the negotiations"). Nor does the fact that USTR "needs to understand what is important to Chile in order to develop its own positions" confer inter-agency status on these external documents. Def. Mem. at 21.

The decision in *Ryan v. Dep't of Justice*, 617 F.2d 781, also is distinguishable. In *Ryan*, the court of appeals held that communications produced by Senators in response to an agency questionnaire regarding nominating procedures for judicial candidates fell within the narrow ambit of Exemption 5. The court characterized the Senators as "temporary consultants" who were "solicited to give advice only for specific projects." *Id.* at 789–90. In the instant case, by contrast, the Chilean officials were not solicited for advice but rather negotiated with and treated as adversaries openly seeking to advance their

own interests. Furthermore, the court in *Ryan* made much of the fact that the documents in that case were produced in response to an agency initiative. *See id.* at 790; *see also Center for Auto Safety v. Dep't of Justice*, 576 F.Supp. at 745 (central to the decision in *Ryan* "was the fact that the advice was obtained on the Department's initiative."). Here, the documents exchanged between the United States and Chile do not reflect a similar solicitation and response.

Other cases cited by defendants also are distinguishable. In *Formaldehyde Inst. v. Dep't of Health and Human Serv.*, 889 F.2d 1118 (D.C.Cir.1989), the court of appeals allowed HHS to withhold unpublished reports by employees and corresponding comments made by outside journals acting as referees on the ground that such outside reviews were essential to the agency's evaluation of the readiness of a work for publication and thus were predecisional. *See* 889 F.2d at 1124. The court found that HHS relied on this exchange between government scientists and outside scientific journals to decide whether and in what form to publish scientific reports in the agency's name. Thus the confidential comments of outside reviewers were protected under Exemption 5 because they were predecisional. *See id.* The court in *Formaldehyde v. HHS* did not address the inter-agency requirement of Exemption 5 at all and made no finding that the outside reviews were inter-agency in nature. *See id.* at 1121. The continued vitality of *Formaldehyde v. HHS* is questionable in light of the Supreme Court's recent emphasis on the importance of the inter-agency requirement under Exemption 5.

*Formaldehyde v. HHS* is distinguishable for an additional reason: The outside reviewers did not pursue any potentially adverse interests in reviewing the submitted report; they merely considered and commented on the agency's submission "[p]ursuant to [each journal's] normal review process" and provided editorial feedback that informed the agency's decision on publication *Formaldehyde v. HHS*, 889 F.2d at 1120. In the instant case, by contrast, the Chilean negotiators did not merely review USTR's proposals and offer evaluations to inform USTR's decision on how to proceed. Rather, the Chilean officials responded to USTR's proposals with Chile's interests in mind and with the explicit goal of influencing USTR policy to their own advantage.

Nor does Judge June Green's decision in *Fulbright & Jaworski v. Dep't of Treasury*, 545 F.Supp. 615 (D.D.C.1982), support defendants' argument. In that case, one of very few to consider Exemption 5 in the context of foreign relations, individual notes taken by a United States negotiator during treaty discussions with France were protected from release under Exemption 5. The court held that "releasing these snapshot views of the negotiations would be comparable to releasing drafts of the treaty" and consequently would risk great harm to the negotiations process. *Id.* at 620. Despite the superficial similarity of context—the "give-and-take" of treaty negotiations (*id.*)—the difference is that the negotiator's notes at issue in *Fulbright & Jaworski* were clearly internal. The question of disclosure turned not on the inter-agency requirement of Exemption 5 but on whether or not the documents were part of the agency's predecisional deliberative process. *See id.* at 620. Judge Green's discussion of the harm that could result from disclosure therefore is irrelevant, since the documents at issue here are not inter-agency, and the Court does not reach the question of deliberative process.

The Court is not oblivious to defendants' concern that disclosure of these documents

may complicate international negotiations on free trade and other issues, and it recognizes the importance of confidentiality in treaty negotiations, particularly where, as here, the United States has promised confidentiality to its partner from the outset. Indeed, concern about confidentiality in communications between the government and the Tribes was at issue in *Klamath Water Users*. *See* 532 U.S. at 11, 121 S.Ct. 1060. Ultimately, however, the Supreme Court concluded that such policy concerns cannot trump the plain language of the Freedom of Information Act or the underlying policy of the FOIA favoring public disclosure. *See Klamath Water Users*, 532 U.S. at 15–16, 121 S.Ct. 1060 (refusing to read an "Indian Trust" exemption into the statute because "[t]here is simply no support for the exemption in the statutory text, which we have elsewhere insisted be read strictly in order to serve FOIA's mandate of broad disclosure.... In FOIA, after all, a new conception of Government conduct was enacted into law, 'a general philosophy of full agency disclosure.'") (quoting *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989)); *see also County of Madison v. United States Dep't of Justice*, 641 F.2d at 1040 (requiring that "sound policy arguments, however appealing, be grounded in a reading of statutory language that fairly reconciles rather than simply ignores the FOIA's phrasing."); *Center for Auto Safety v. Dep't of Justice*, 576 F.Supp. at 748 ("The Court is sympathetic to the DOJ's predicament. Disclosure of these documents may arguably stifle consent decree negotiations. These factors, however, are for legislative not

judicial concern, . . ."). For these reasons, the Court concludes that all documents or portions thereof that were produced by or shared with the Government of Chile do not qualify as "inter-agency or intra-agency" documents and thus are not protected from disclosure by Exemption 5.[7]

b. Documents Containing Information Relating to Communications From or Meetings With Chile

 The FOIA mandates that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Furthermore, "[i]t has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. United States Dep't of the Air Force*, 566 F.2d at 260. Plaintiffs therefore have challenged defendants' withholding of any reasonably segregable portions of internal documents containing " 'purely factual, nonexempt information' " that relates to the negotiations with Chile. *See* Pl. Mem. (quoting *Army Times Publishing Co. v. Dep't of the Air Force*, 998 F.2d 1067, 1071 (D.C.Cir.1993) (citations omitted)). Plaintiffs claim that the index of documents reveals that several documents were withheld that contain factual descriptions or summaries of communications or meetings with Chile. Plaintiffs argue that such factual portions must be released. *See* Pl. Mem. at 25–26; Plaintiffs' Reply in Support of Plaintiffs' Motion for Summary Judgment at 12–13 ("Pl.Reply").

---

**7.** Because these documents fail the first prong of the test for protection under Exemption 5 because they are not inter-agency or intra-agency documents, the Court does not reach the second prong of the test, namely the ques-

tion of whether or not these documents are predecisional and deliberative in nature. *See Klamath Water Users*, 532 U.S. at 12 n. 3, 121 S.Ct. 1060.

■ In opposition, defendants argue that releasing such portions would expose USTR's deliberative process, either by revealing substantive information about the countries' negotiating positions or by revealing USTR's internal impressions and evaluations of the negotiations. *See* Def. Opp. at 9–10. As plaintiffs concede, even purely factual documents may be exempt from disclosure under Exemption 5 if the selection of facts for summary or description reflects an agency's deliberative process. *See* Pl. Reply at 12; *Army Times Publishing Co. v. Dep't of the Air Force*, 998 F.2d at 1071. *But see Brownstein Zeidman & Schomer v. Dep't of the Air Force*, 781 F.Supp. at 35 (requiring disclosure of running summaries of offers and counteroffers because, while the documents were not completely factual in nature, they also did not "include much in the way of negotiating strategy").

The Court has held that any documents produced by or exchanged with Chile are not protected by Exemption 5 because they are not inter-agency or intra-agency records. *See supra*, Section II.B.1(a). It follows that any factual portions of documents describing or summarizing such communications to or from Chile likewise are not protected. *See EPA v. Mink*, 410 U.S. at 88, 93 S.Ct. 827. Furthermore, plaintiffs seek only those portions of documents that are non-deliberative in nature; any portions that reveal USTR's subjective impressions of Chile's proposals or the negotiations are necessarily excluded from this request. *See* Pl. Mem. at 25–26; Pl. Reply at 12–14. For these reasons, the Court holds that defendants must identify and release all reasonably segregable and factual, nondeliberative portions of documents relating to USTR's meetings or communications with Chile.

### 2. *Exemption 1*

■ Exemption 1 of the FOIA protects from disclosure any records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). USTR has withheld five documents—Documents 209 and 211–214—pursuant to this exemption under Executive Order 12, 958. The Executive Order allows classification where the original classification authority determines that unauthorized disclosure "reasonably could be expected to result in damage to the national security," and the original classification authority is "able to identify or describe the damage." Exec. Order No. 12, 958, § 1.2(a), 60 Fed.Reg. 19,825 (Apr. 17, 1995), *reprinted in* the Historical and Statutory Notes to 50 U.S.C. § 435 (West Supp.2002); *see Salisbury v. United States*, 690 F.2d 966, 972 (D.C.Cir.1982). While the Court determines *de novo* whether the records have been properly withheld, a court must give "substantial weight" to agency declarations and affidavits in determining whether records have been properly classified, so long as those declarations "contain reasonable specificity in detail." *Halperin v. Central Intelligence Agency*, 629 F.2d 144, 148 (D.C.Cir.1980); *see American Civil Liberties Union v. Department of Justice*, 548 F.Supp. 219, 222 (D.D.C.1982); *Iglesias v. Central Intelligence Agency*, 525 F.Supp. 547, 552 (D.D.C.1981).

■ The Court has reviewed the declarations submitted by defendants in support of the claimed exemption and concludes that defendants properly invoked Exemption 1 to withhold these five documents. In his declaration in support of the classification and withholding of these documents, Assistant United States Trade Representative Joseph Papovich affirmed the proper classification of all five documents pursuant to Executive Order 12, 958. *See* Def. Mem., Exhibit 3, Declaration of Jo-

seph Papovich ¶ 6 ("Papovich Decl."). With respect to three of the withheld documents (Documents 211, 212 and 213), Mr. Papovich explained:

The issues brought to the TPRG [Trade Policy Review Group] are often sensitive and controversial. In connection with the U.S.-Chile free trade negotiations, one issue that came before the TPRG was the U.S. negotiating position on rules and procedures governing foreign investment. Foreign investment rules and procedures have generated considerable controversy in the United States and abroad. Historically, foreign investment has been a particularly controversial issue in Latin America. Documents 211, 212, and 213 are TPRG papers that address proposed U.S.-Chile investment rules.... Public release of documents 211, 212, and 213 would reveal high-level internal government deliberations on foreign investment issues and thus undermine the U.S. government's ability to debate and resolve some of the most complex and sensitive issues at stake in the negotiations. Disclosure of these documents would not only expose U.S. legal, policy, and strategic analysis of these issues, but also differing agency viewpoints on key investment rules and procedures. If information of that kind were in the public sector, it would permit other governments with which the United States is seeking to negotiate investment rules to gauge the strength of U.S. negotiating positions and exploit interagency differences. Accordingly, disclosure of these documents would make it considerably more difficult for U.S. negotiators to conclude a free trade agreements [sic] with other governments that fully secure U.S. economic interests.

*Id.* at ¶¶ 5, 7.

As to the remaining two classified documents, Documents 209 and 214, Mr. Papovich stated:

Revealing the TPRG's discussions concerning exceptions [to be included in the Free Trade Agreement] and competition could undermine U.S. negotiating positions and make it more difficult to conclude the agreement. Moreover, although the TPRG deliberations on both these subjects were initiated in the context of the Chile FTA, they have important implications for current and future U.S. economic relations with other trading partners.... The disclosure of these documents would pose a serious risk of harm to our relations with U.S. trading partners.... If high-level internal discussions on these topics were made public, it might be understood to signal a change in U.S. policy in these areas and raise questions about the U.S. government's willingness to apply current standards. Hence, the release of these documents could seriously harm diplomatic relations with our trading partners.

*Id.* at ¶¶ 8–10.

Based on these statements, the Court concludes that Joseph Papovich's declaration "describe[s] the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed," and is "neither controverted by contrary record evidence nor impugned by bad faith on the part of the agency." *King v. Dep't of Justice,* 830 F.2d 210, 217 (D.C.Cir.1987). Because defendants have demonstrated proper classification pursuant to Executive Order 12,958 and a reasonable expectation of harm to national security if these documents are publicly released, the Court finds that Documents 209 and 211–214 properly were withheld pursuant to Exemption 1. *See* 5 U.S.C.

§ 552(b)(1); Exec. Order No. 12,958, § 1.2(a), 60 Fed.Reg. 19,825 (Apr. 17, 1995); *see also Halperin v. Central Intelligence Agency,* 629 F.2d at 148.

### 3. *Waiver by Public Disclosure*

██ Plaintiffs argue that irrespective of the Court's rulings under Exemptions 1 and 5, certain documents (at least 14 in number) must be disclosed on the ground that defendants have waived the right to assert either exemption for these documents by publicly releasing information similar to that contained in the documents. *See* Pl. Mem. at 26, 29 n. 12; Pl. Reply at 14–16. Based on two letters written to USTR by four individuals, plaintiffs claim that USTR released information to these individuals relating to United States proposals and certain inter-agency communications concerning the investment provisions of the proposed trade agreement. *See* Pl. Mot, Exhibit 6, Letter from Tom Niles to Peter Allgeier, USTR, dated November 19, 2001 ("Niles Letter"); Pl. Reply, Exhibit 1, Letter from Thomas Niles, U.S. Council for International Business; Calman Cohen, Emergency Committee for American Trade; William Reinsch, National Foreign Trade Council; and Jerry Jasinowski, National Association of Manufacturers, to Robert Zoellick, USTR, dated August 30, 2001 ("Niles, Cohen, Reinsch and Jasinowski Letter").

Furthermore, plaintiffs assert that defendants have failed to describe the withheld documents with sufficient specificity to enable plaintiffs to identify those that relate to the publicly disclosed information. *Id.* at 16.

Because the Court has held that those documents withheld by defendants under Exemption 5 are not "inter-agency" and thus are not protected by that exemption, *see supra,* Section II.B.1, the Court need not address plaintiffs' waiver argument with respect to such documents. As to those documents withheld under Exemption 1, the Court finds that plaintiffs have failed to demonstrate waiver because they have not satisfied their "initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State,* 702 F.2d 1125, 1130 (D.C.Cir.1983); *see also Public Citizen v. Dep't of State,* 11 F.3d 198, 201 (D.C.Cir.1993) ("FOIA plaintiffs cannot simply show that similar information has been released, but must establish that a specific fact already has been placed in the public domain."). Although plaintiffs suggest that defendants have disclosed "in great detail proposals being considered for investment provisions in U.S. free trade agreements," the letters upon which plaintiffs base this argument do not contain or reference any specific information. Instead, the letters merely reflect the authors' belief that certain issues are under consideration by the Trade Policy Review Group, with no indication of specific agency positions or TPRG's analysis of the issues. *See* Niles Letter; Niles, Cohen, Reinsch and Jasinowski Letter; Def. Opp. at 11–12.

Furthermore, USTR directly refutes plaintiff's claim of waiver with the declaration of Frances Huegel, Director of Investment for USTR. *See* Def. Surreply, Exhibit 1, Declaration of Frances Huegel ("Huegel Decl."). Huegel, who has direct knowledge of the briefing sessions and information releases upon which plaintiffs base their claim of waiver, clearly stated that "[d]uring these sessions, the USTR did not provide its own views as to the pros and cons of maintaining, amending, or eliminating NAFTA-like provisions on investment with respect to the proposed United States–Chile Free Trade Agreement." Huegel Decl. at ¶¶ 1–3, 5.

Plaintiffs' claim also is belied by the sworn declarations of Susan P. Cronin and Jo-

seph Papovich, USTR officials familiar with the requested documents and the on-going negotiations with Chile. *See* Def. Mem., Exhibit 2, Declaration of Susan P. Cronin ("Cronin Decl."); Papovich Decl. Both Cronin and Papovich stated that, to the best of their knowledge, the documents withheld in response to plaintiffs' request "have not been circulated outside the executive branch" other than to the Chilean government and trade advisory committees established pursuant to statute as advisors to USTR. Cronin Decl. at ¶¶ 21–26; Papovich Decl. at ¶ 13.

In light of these sworn statements denying public disclosure and plaintiffs' failure to present evidence of "specific information in the public domain that appears to duplicate that being withheld," the Court concludes that defendants have not waived the right to claim Exemption 1 privilege for the contested documents. *Afshar v. Dep't of State*, 702 F.2d at 1130; *see Public Citizen v. Dep't of State*, 11 F.3d at 201, 203 (to show waiver of Exemption 1, plaintiff must demonstrate that *"specific information at issue* has been officially disclosed. . . . We recognize that this is a high hurdle for a FOIA plaintiff to clear, but the Government's vital interest in information relating to national security and foreign affairs dictates that it must be.") (emphasis in original); *see also In re Sealed Case*, 121 F.3d 729, 741 (D.C.Cir. 1997) (waiver of executive privilege should not be lightly inferred; waiver applies only to documents that are identical to documents publicly released).

For all of these reasons, the Court grants in part and denies in part both plaintiffs' motion for summary judgment and defendants' motion for summary judgment. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

## ORDER

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that the Court GRANTS IN PART and DENIES IN PART plaintiffs' motion for summary judgment [8]; it is

FURTHER ORDERED that the Court GRANTS IN PART and DENIES IN PART defendants' motion for summary judgment [6]; it is

FURTHER ORDERED that defendants are enjoined from withholding any documents produced by or shared with the Government of Chile during the negotiations of the United States–Chile Free Trade Agreement, including documents 9, 15, 16, 19, 23, 27–29, 52, 57, 89–94, 97, 99, 111, 124, 134, 141, 142, 145–149, 154, 156–59, 167, 173, 180–81, 186–191 and 215–280. Such documents shall be released to plaintiffs on or before January 17, 2003; it is

FURTHER ORDERED that defendants are enjoined from withholding any reasonably segregable portions of documents produced by or shared with the Government of Chile during the negotiations of the United States–Chile Free Trade Agreement, including documents 22, 36, 130, 152, 153, 155, 156, 160–162, 164–166, 169–172, 176, 177, 182–185. Such documents shall be released to plaintiffs on or before January 17, 2003; it is

FURTHER ORDERED that on or before January 17, 2003, defendants shall identify and release all reasonably segregable portions of documents containing factual information relating to communications to or from the Government of Chile during the negotiations of the United States–Chile Free Trade Agreement; it is

FURTHER ORDERED that defendants need not disclose any portions of

documents 209, 211, 212, 213 and 214; and it is

FURTHER ORDERED that this Order shall constitute a FINAL JUDGMENT in this case. This is a final appealable order. *See* Rule 4(a), Fed. R.App. P.

SO ORDERED.