**PUBLIC CITIZEN, INC., Appellee,**

v.

**DEPARTMENT OF JUSTICE and National Archives and Records Administration, Appellants.**

No. 96–5226.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 13, 1997.

Decided April 22, 1997.

Marina Utgoff–Braswell, Assistant U.S. Attorney, Washington, DC, argued the cause for appellants. With her on the briefs were Eric H. Holder, Jr., U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Colette G. Matzzie, Washington, DC, argued the cause for appellee. With her on the brief was Michael E. Tankersley.

Before: SILBERMAN, WILLIAMS and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1994), Public Citizen seeks access to certain records maintained by the National Archives and Records Administration ("Archives") and the Department of Justice. The records sought are communications between the two agencies and former Presidents Ronald Reagan and George Bush relating to access to their respective presidential records.

The defendant agencies invoked FOIA's Exemption 5, *id.* § 552(b)(5), governing "inter-agency or intra-agency memorandums or letters," the so-called deliberative process exemption. They argued that because the communications took place as part of consultations called for by the Presidential Records Act, 44 U.S.C. §§ 2201–07 (1994), they fit within the established rule applying Exemption 5 to communications between an agency and an external consultant, when made for the purpose of aiding the agency's deliberative process. The district court rejected the claim, on the ground that the relationship between the former Presidents and Archives was potentially adversarial and the communications therefore outside the deliberative process exemption. We reverse.

\* \* \*

In 1989 private parties brought suit to assure the preservation of Reagan-era records found on the computer systems of the Executive Office of the President and the National Security Council. See generally *Armstrong v. Executive Office of the President,* 90 F.3d 553, 556 (D.C.Cir.1996); *Armstrong v. Executive Office of the President,* 1 F.3d 1274, 1280 (D.C.Cir.1993). The Archivist took custody of these records in January 1993. In March 1994, following discussions with Archives, President Reagan waived Presidential Records Act restrictions that he had formerly imposed as to these computer tapes. The communications leading to this waiver, between Archives, the Department of Justice and former President Reagan, form the first set of records disputed here.

The second set of records are communications between the same agencies and former President Bush. Archives had taken custody of the electronic records from his administra-

tion when he left office on January 20, 1993. At the same time, he and Archivist Don W. Wilson signed an agreement ("Bush–Wilson Agreement") stating that President Bush would "retain exclusive legal control of all Presidential information ... contained on the materials" and setting forth procedures for segregating and identifying Presidential materials. *American Historical Association v. Peterson,* 876 F.Supp. 1300, 1323 (D.D.C. 1995). In addition, it provided that any "Presidential information on the materials shall be disposed of in accordance with instructions of George Bush...." *Id.* at 1324. In December 1994 the American Historical Association and others (including Public Citizen) challenged this agreement as in violation of the Presidential Records Act. See *id.* at 1303. In late January 1995 the Archivist and counsel for President Bush exchanged letters memorializing their agreement on the treatment of the electronic records covered by the Bush–Wilson Agreement. The Department of Justice, a party to the *American Historical Association* lawsuit, filed the exchange of letters with the district court, arguing that this agreement mooted claims that the earlier agreement was illegal. The communications leading to the January 1995 agreement constitute the second set of records at issue.

\* \* \*

■ FOIA's deliberative process exemption protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). We find that communications between Archives and a former President on matters relating to Presidential records fall within this exception.

■ While Public Citizen is doubtless right that a former President is not an agency under FOIA, see *id.* §§ 551(1), 552(f), records of communications between an agency and outside consultants qualify as "intra-agency" for purposes of Exemption 5 if they have been "created for the purpose of aiding the *agency*'s deliberative process." *Dow Jones & Co., Inc. v. Department of Justice,* 917 F.2d 571, 575 (D.C.Cir.1990) (emphasis in original); *CNA Financial Corp. v. Donovan,* 830 F.2d 1132, 1161 (D.C.Cir.1987). It is "irrelevant" whether the author of the documents is "a regular agency employee or a temporary consultant." *Formaldehyde Institute v. Dept. of Health and Human Svcs.,* 889 F.2d 1118, 1122 (D.C.Cir.1989) (citations omitted). Two circumstances make application of this doctrine to the disputed records peculiarly appropriate.

First, the former President in this context can hardly be viewed as an ordinary private citizen. He retains aspects of his former role—most importantly, for current purposes, the authority to assert the executive privilege regarding Presidential communications. *Nixon v. Administrator of General Services,* 433 U.S. 425, 448–49, 97 S.Ct. 2777, 2792–93, 53 L.Ed.2d 867 (1977); *Public Citizen v. Burke,* 843 F.2d 1473 (D.C.Cir.1988). In finding that he possessed such authority, the Court in *Nixon* adopted the Solicitor General's reasoning that, for a President to be able to give adequate assurances of confidentiality to his advisors, the assurances must last beyond his tenure. "[T]he privilege is not for the benefit of the President as an individual, but for the benefit of the Republic. Therefore the privilege survives the individual President's tenure." *Nixon,* 433 U.S. at 449, 97 S.Ct. at 2793.

Second, the consultative relationship involved here is not only explicit, cf. *Dow Jones,* 917 F.2d at 575 (recognizing even implicit relationships), but is mandated by statute. The Presidential Records Act establishes an elaborate structure for the management of Presidential records. The United States retains ownership, possession and control. 44 U.S.C. § 2202 (1994). But the President plays a significant role even after he leaves office. On his departure, he must designate what records (within specified categories) will be "restricted" and for what period (up to 12 years). *Id.* § 2204(a). Before deciding whether to allow access to such a restricted record, the Archivist must consult the former President, *id.* § 2204(b)(3). The former President may, if he wishes, waive his restrictions, *id.* § 2204(b)(1)(A)(i), but, on the other hand, he may (consonant with *Nixon*) challenge in court any decisions by the Archivist that he believes violate his rights or privileges, *id.* § 2204(e).

Consultations under the Presidential Records Act are precisely the type that Exemption 5 was designed to protect. If it is to effectively deliberate, an agency may need or want to "enlist the help of outside experts skilled at unravelling [the] knotty complexities" of "problems outside their ken." *CNA Financial Corp.*, 830 F.2d at 1162. The former President clearly qualifies as an expert on the implications of disclosure of Presidential records from his administration.

In resisting application of the deliberative process privilege, Public Citizen asserts a series of false dichotomies. Because there are other aspects to the relationship, it says, it cannot be consultative for purposes of Exemption 5. But the consultative relationship is not mutually exclusive with any of the others to which Public Citizen points. At some point, of course, features of the other relationships (above all, a possible future adversary one) might come to eclipse the consultative relationship, but plaintiff has offered nothing concrete to suggest any movement in that direction here.

Public Citizen's central claim is that the former President has a distinct and independent interest that makes him an adversary rather than a consultant. Similarly, it says that the Presidential Records Act does not establish the type of consultative role protected under FOIA Exemption 5, but rather is designed to "avert disputes or misunderstandings concerning [the former President's] rights." Appellee's Br. at 25. It is clearly true that a former President's power to assert his rights and privileges, preserved and given specific judicial venue in the Presidential Records Act, 44 U.S.C. § 2204(e), constitutes an independent interest. But consultations under the Act are not just about rights and privileges. The Archivist has "an affirmative duty to make [Presidential] records available to the public as rapidly and completely as possible consistent with the provisions of [the] Act." *Id.* § 2203(f)(1). Archives's Special Counsel for Information Policy explained that in that context there was a need for conversations "to facilitate correct and consistent application of the restriction categories, to maximize rapid disclosure of records to the public, and to ensure smooth and workable procedures for dealing with special access requests." Supplemental Declaration of Miriam M. Nisbet at 3. The existence of independent presidential interests provides no basis for doubting this explanation.

■ Public Citizen attacks the government's reliance on government participants' description of the subjects of the colloquies, condemning this as "reliance on the subjective perceptions of the government attorneys." Appellee Br. at 30. But the first step of deciding whether a document is deliberative is to examine the purposes for which it was prepared, *Formaldehyde*, 889 F.2d at 1124, and the first step of that inquiry is, almost inevitably, to hear out the participants. See, e.g., *id.* at 1124–25. Having nothing to contradict the participants' account of the deliberations' function, plaintiff cannot prevail by dubbing that account "subjective."

■ More generally, the potential for an adversary relationship is not enough to negate one of consultation. Doctors, lawyers and other expert advisors may find themselves in litigation as either plaintiffs or defendants against those whom they advise (e.g., breach of contract and malpractice claims), but for all that they are still consultants. Similarly, there is often a *possibility* of litigation between entities within the executive branch, see Michael Herz, "United States v. United States: When Can the Federal Government Sue Itself?" 32 Wm. & Mary L.Rev. 893, 895–96 & nn.3–11 (1991) (citing various examples of such suits), yet no one has suggested that courts should on this account refuse to apply Exemption 5 to their inter-agency communications.

■ Public Citizen makes a slightly more focussed argument of the same type, saying that even if consultations under the Presidential Records Act are protected, the records it seeks here were not created pursuant to the consultative provisions of the Act. First, it attempts to distinguish between negotiations concerning "waiver of access restrictions," which falls under 44 U.S.C. § 2204(b)(1), and consultations "as to whether a requested record is subject to an access

restriction," which falls under § 2204(b)(3). Only on the latter does the statute mandate consultation. But as one of the benefits of consulting the former President is that he may decide to grant a waiver, thereby mooting the access issue, acceptance of plaintiff's theory would require an artificial and pointless segmentation of the consultative process.

 Second, Public Citizen argues that the communications with former President Bush concerned the Bush–Wilson agreement, which, according to *American Historical Ass'n*, 876 F.Supp. 1300, 1319–20 (D.D.C. 1995), granted power to the former President in violation of the Presidential Records Act and the Constitution. So? The only role of the Bush–Wilson Agreement here was to define the universe of relevant records. The presence of a legal violation in that Agreement has nothing to do with whether the consultative provisions of the Presidential Records Act apply to communications regarding access to the records.

 Public Citizen also argues that potential adversity between Archives and the former Presidents turns their communications into settlement negotiations. We need not address the applicability of Exemption 5 to settlement negotiations, because the existence of peripheral litigation over the underlying records does not make these agreements "settlements." Although the *Armstrong* litigation was in progress at the time of President Reagan's waiver, President Reagan was not a party to it. Similarly, although the Bush agreement took place in the context of the *American Historical Ass'n* litigation, Bush was not a party at the time of the agreement. That the consultations may have helped Archives resolve the pending litigation does not strip them of their character as consultations under the Presidential Records Act.

 A closing note. The disputed communications actually ran between the attorneys to the former Presidents, on one side, and Archives and the Department of Justice, on the other. Public Citizen makes much of the status of the former Presidents' lawyers as private citizens. But as the lawyers served solely in a representative capacity, the former Presidents are the relevant actors for our purposes.

Because we find these records protected by Exemption 5, the decision of the District Court is

*Reversed.*