# Applicability of Post-Employment Restrictions in 18 U.S.C. § 207 to a Former Government Official Representing a Former President or Vice President in Connection with the Presidential Records Act

Title 18, section 207, U.S. Code, would not prohibit a former government official from representing a former President or former Vice President in connection with his role under the Presidential Records Act, 44 U.S.C. §§ 2201-2207 (1994).

June 20, 2001

MEMORANDUM OPINION FOR THE ASSOCIATE COUNSEL TO THE PRESIDENT

You have requested our opinion whether 18 U.S.C. § 207 (1994 & Supp. II 1996) would prohibit a former government official from representing a former President in connection with his role under the Presidential Records Act, 44 U.S.C. §§ 2201-2207 (1994) ("PRA"), and whether it would prohibit such a person from representing a former Vice President in a similar capacity. We conclude that 18 U.S.C. § 207 would not prohibit such representation.[1]

## I.

Title 18, section 207 imposes restrictions on the ability of former federal employees to represent third parties on certain matters before certain federal agencies and other entities. Specifically, 18 U.S.C. § 207(a)(1) prohibits

> [a]ny person who [was] an officer or employee (including any special Government employee) of the executive branch of the United States . . . [from] knowingly mak[ing], with the intent to influence, any communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United

---

[1] On January 19, 2001, Counsel to the President Beth Nolan asked our opinion on this same question, limited to the representation of a former President. At that time, we orally advised Ms. Nolan that if the individual representing the former President were employed under the Presidential Transition Act, 3 U.S.C. § 102 note (1994) ("PTA"), and did not receive compensation for the representation from any source other than the transition, he or she would not be barred by 18 U.S.C. § 207 from providing such representation during the six months covered by the PTA (i.e., six months following the change in presidential administrations). That advice was based upon a 1988 opinion of this Office. *See* Letter for Hon. Frank Q. Nebeker, Director, Office of Government Ethics, from Douglas W. Kmiec, Assistant Attorney General, Office of Legal Counsel (Nov. 18, 1988). You have now requested our opinion whether 18 U.S.C. § 207 permits a former government official to represent a former President in connection with his advisory role under the PRA even after the six-month period covered by the PTA. You have also asked us to address the same question with regard to representation of a former Vice President.

States or the District of Columbia, on behalf of any other person (except the United States or the District of Columbia) in connection with a particular matter—

> (A) in which the United States or the District of Columbia is a party or has a direct and substantial interest,

> (B) in which the person participated personally and substantially as such officer or employee, and

> (C) which involved a specific party or specific parties at the time of such participation.

Under 18 U.S.C. § 207(c), certain senior personnel face an additional prohibition. Specifically, a person falling within categories set out in section 207(c)(2) may not,

> within 1 year after the termination of his or her service or employment . . . knowingly make[], with the intent to influence, any communication or appearance before any officer or employee of the department or agency in which [the] person served . . . , on behalf or any other person (except the United States), in connection with any matter on which such person seeks official action by any officer or employee of such department or agency.[2]

Section 207 also specifies an exception to its various prohibitions that is particularly relevant here: It provides that "[t]he restrictions contained in this section shall not apply to acts done in carrying out official duties on behalf of the United States." *Id.* § 207(j)(1).

Under the PRA, the Archivist of the United States is directed to restrict public access to prior presidential administrations' records that meet certain criteria defined by the statute. *See* 44 U.S.C. § 2204(a)-(b)(1). The PRA further provides that "[d]uring the period of restricted access . . . the determination whether access to a Presidential record or reasonably segregable portion thereof shall be restricted

---

[2] Section 207(d) may also be relevant. That section establishes further restrictions on the post-employment activities of certain "very senior personnel" of the Executive Branch and independent agencies. Specifically, it prohibits a person (defined in section 207(d)(1)(A)-(C)), within one year following the termination of his or her service, from communicating on behalf of any other person (except the United States) with any officer or employee of the agency or department where the covered person previously served in the year before his or her service terminated, and with any person appointed to an executive position listed in 5 U.S.C. §§ 5312, 5313, 5314, 5315, or 5316 (Supp. V 1999). Those subject to section 207(d) include persons appointed by the President under 3 U.S.C. § 105(a)(2)(A) (1994) or by the Vice President under 3 U.S.C. § 106(a)(1)(B).

shall be made by the Archivist, in his discretion, after consultation with the former President." *Id*. § 2204(b)(3).[3] In the case of Vice-Presidential records, the PRA provides that they "shall be subject to the provisions of [the PRA] in the same manner as Presidential records," and that "[t]he duties and responsibilities of the Vice President, with respect to Vice-Presidential records, shall be the same as the duties and responsibilities of the President under this chapter with respect to Presidential records." *Id*. § 2207.

Regulations implementing the PRA anticipate that former Presidents may designate representatives in matters relating to their consultative role under the PRA. *See* 36 C.F.R. § 1270.46(a) (2001) ("The Archivist or his designee shall notify a former President or his designated representative(s) before any Presidential records of his Administration are disclosed."); *see also* Exec. Order No. 12667 (Jan. 18, 1989) (providing that the Archivist shall notify a former President "or his designated representative" of the Archivist's decision whether to honor the former President's assertion of executive privilege).[4] During the Clinton Administration, the White House Counsel's Office expressed the view that a former President would require legal advice in order to consult effectively with the Archivist as contemplated by the PRA, and that an attorney advising a former President on such matters would need to communicate on the former President's behalf not just with the Archivist, but with the current White House and possibly other federal agencies as well. The question here is whether, under section 207's post-employment restrictions, an attorney could engage in such communications on the former President's behalf if the attorney had served in the White House Counsel's Office or elsewhere in the federal government during the former President's administration. The same question applies to representation of a former Vice President in connection with the PRA. The National Archives and Records Administration ("NARA") states that although the designated representatives of former Presidents Reagan and Bush are former officials from their respective administrations, "concern about this issue was simply never contemplated by NARA, OGE, DOJ, or any incumbent or former President or Vice President or designated representative prior to the end of the Clinton Administration." *See* Letter for Robert W. Cobb, Associate Counsel to the President, from Gary M. Stern, General Counsel, National Archives and Records Administration at 1 (May 3, 2001) ("Stern Letter").

---

[3] The PRA also specifies that none of its provisions is to be construed to "confirm, limit, or expand any constitutionally-based privilege which may be available to an incumbent or former President." 44 U.S.C. § 2204(c)(2).

[4] Similarly, the PRA itself recognizes that former Presidents may, in certain limited circumstances, be represented by third parties for purposes of the PRA. Specifically, the PRA provides that, "[u]pon the death or disability of a . . . former President, any discretion or authority the . . . former President may have had under this chapter shall be exercised by the Archivist unless otherwise previously provided by the . . . former President in a written notice to the Archivist." 44 U.S.C. § 2204(d).

## II.

The key question is whether an individual who communicates with federal agencies on behalf of a former President or Vice President in these circumstances is, within the meaning of section 207, acting "on behalf of any other person (except the United States or the District of Columbia)."[5] 18 U.S.C. § 207(a); *see id.* § 207(c). If so, section 207's prohibitions apply. If, however, such an individual is "carrying out official duties on behalf of the United States," *id.* § 207(j)(l), or is otherwise not acting "on behalf of any other person (except the United States . . .)," section 207's prohibitions do not apply. For the reasons discussed below, we conclude that section 207's prohibitions do not apply to this sort of representation.

This Office has previously concluded that in using the phrase "on behalf of" in section 207, "Congress intended . . . to reach only communications made as a representative of another, not communications that merely support another or another's position." Memorandum for Michael Boudin, Deputy Assistant Attorney General, Antitrust Division, from J. Michael Luttig, Assistant Attorney General, Office of Legal Counsel, *Re: Application of 18 U.S.C. § 207(a) to Pardon Recommendation Made by Former Prosecutor* at 3 (Oct. 17, 1990) ("Luttig Memorandum"). Typically, the hallmark of such a relationship is "at least some degree of control by the principal over the agent who acts on his or her behalf." *Id.* at 6; *see* Restatement (Second) of Agency § 1(1) (1958). An attorney representing a former President in connection with the President's consultative role under the PRA would be acting "on behalf of" the former President as defined in section 207. *See Public Citizen, Inc. v. Department of Justice*, 111 F.3d 168, 172 (D.C.

---

[5] In at least three circumstances, we could conclude that at least some of section 207 would not apply, without reaching the "on behalf of" issue. None of these circumstances, however, allows us to avoid the "on behalf of" issue here. First, we assume that the attorney representing the former President or Vice President would be a former employee of the White House or Vice President's Office, respectively, and that the kind of communications being contemplated here would include communications with either the White House or Vice President's Office. If this were not the case, then section 207(c) would not apply, since it covers only appearances before and communications with the federal agency in which the person was previously employed. Section 207(a) would apply, however, since it covers appearances before and communications with any federal agency or department. As to some former officials, moreover, section 207(d) would apply if the communications at issue were with either the White House or any official appointed to an Executive Branch position listed in 5 U.S.C. § 5312, 5313, 5314, 5315, or 5316.

Second, we assume that at least some of the contemplated communications would take place within one year of the attorney's departure from the government. If this were not the case, sections 207(c) and (d) would again not apply, this time because they each establish only a one-year ban on communications. Section 207(a) would still apply, however, since it imposes a lifetime ban.

Third, we assume that the contemplated communications might involve "matter[s] in which [the attorney concerned] participated personally and substantially" while in the government. 18 U.S.C. § 207(a)(1)(B). If this were not the case, section 207(a) would not apply. Sections 207(c) and 207(d) would still apply, however, since their prohibitions are not so confined.

Cir. 1997) (describing attorneys employed by former Presidents in connection with their consultative roles under the PRA as having "served solely in a representative capacity"). The same is true for an attorney representing a former Vice President in such a capacity. Whether the attorney is thereby acting on behalf of the United States or on behalf of "any other person" turns on whether, in the unique circumstances of the PRA, a former President or Vice President is viewed as retaining at least some aspects of his official role rather than as occupying solely the position of a private person.

As this Office has previously explained, Congress's "only concern" in passing and amending section 207 "was with preventing government employees from so-called 'revolving door' representation of *private parties* before the government." Luttig Memorandum at 4 (citing S. Rep. No. 95-170, at 32 (1977)) (emphasis added). We have found no evidence that Congress thought of former Presidents fulfilling their role under the PRA as "private parties." On the contrary, "the former President in this context can hardly be viewed as an ordinary private citizen." *Public Citizen*, 111 F.3d at 170. Rather, the PRA assigns former Presidents a special, quasi-official role because, in certain circumstances, they may be uniquely situated to address the interests of the United States. Typically, those circumstances involve questions of executive privilege. *See id*. (In the context of the PRA, a former President "retains aspects of his former role—most importantly . . . the authority to assert the executive privilege regarding Presidential communications."). When the Archivist is called upon to determine whether certain presidential records created during a former President's administration ought to be released, considerations of executive privilege may inform that determination. And although the privilege belongs to the Presidency as an institution and not to any individual President, the person who served as President at the time the documents in question were created is often particularly well situated to determine whether the documents are subject to a claim of executive privilege and, if so, to recommend that the privilege be asserted and the documents withheld from disclosure. *Cf. id*. at 171 ("The former President clearly qualifies as an expert on the implications of disclosure of Presidential records from his administration."). In providing advice to the Archivist on such matters, a former President helps to support the institution of the Presidency and the constitutionally-based executive privilege.

The Supreme Court reached a similar conclusion in *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977). In that case, the Court addressed the issue whether a former President may assert executive (sometimes styled "Presidential") privilege as to certain documents relating to his term as President and held by the current administration. Because the current administration did not support the former President's assertion of privilege, the Court recognized that the case involved an "assertion of a privilege against the very Executive Branch in whose name the privilege is invoked." *Id*. at 447-48. The Court acknowledged that, to the

extent effective communication between a sitting President and his advisers might be chilled by the disclosure of documents relating to a prior administration, an incumbent may decide to assert a privilege as to "confidences of a predecessor when he believes that the effect [of disclosure] may be to discourage candid presentation of views by his contemporary advisers." *Id*. at 448. Nevertheless, a sitting President is not the only one competent to assert the privilege:

> Unless [the President] can give his advisers some assurance of confidentiality, a President could not expect to receive the full and frank submissions of facts and opinions upon which effective discharge of his duties depends. The confidentiality necessary to this exchange cannot be measured by the few months or years between the submission of the information and the end of the President's tenure; the privilege is not for the benefit of the President as an individual, but for the benefit of the Republic. Therefore, the privilege survives the individual President's tenure.

*Id*. at 448-49 (quoting, and adopting, Brief for the Solicitor General on Behalf of Federal Appellees). Thus, because protection of the executive privilege is "for the benefit of the Republic," and because a former President is in a special position to determine the propriety of asserting that privilege regarding records produced during his tenure, former Presidents are competent to assert the privilege as to such records. Indeed, in asserting this privilege, a former President speaks not only for "the benefit of the Republic" but also in the "name" of the Executive Branch. *Id*. at 448.[6] Accordingly, an individual who represents a former President in this context is not engaged in the kind of representation of a purely private entity at which section 207's prohibitions are aimed.

Moreover, prohibiting a former government official from representing a former President in connection with his consultative role under the PRA would not further the underlying policy aims of section 207. The problems of undue influence and divided loyalties that characterize most representational relationships prohibited by section 207 are absent in this context. Here, Congress has expressly defined a consultative role for former Presidents. In faithfully advising and representing the

---

[6] That a former President and a current President may differ as to the propriety of disclosing certain presidential documents from the former President's administration does not alter this conclusion. In *Nixon* itself, President Nixon's attempted assertion of executive privilege was not supported by either President Ford or President Carter. *See* 433 U.S. at 449. But that did not prevent the Court from concluding that President Nixon was competent to assert the privilege as to certain documents from his time in office. Moreover, it is not uncommon for different agencies or departments of the Executive Branch to take different public positions on certain legal questions, each one claiming to speak on behalf of the United States. *See generally* Michael Herz, *United States v. United States: When Can the Federal Government Sue Itself?*, 32 Wm. & Mary L. Rev. 893 (1991).

former President as he fulfills that role, an attorney would simply be helping the President to effectuate a special role expressly approved by Congress.

Our conclusion accords with practice. As NARA notes, former Presidents Reagan and Bush have both been represented by former government officials in connection with their consultative roles under the PRA. Stern Letter at 1. Although it appears that the representation in both cases was undertaken without any explicit consideration of section 207's possible application, *see id*., this practice lends some support to our conclusion that section 207 simply does not apply to representation provided to a past President in connection with his role under the PRA.

We reach the same conclusion with respect to the representation of former Vice Presidents. In directing that "Vice-Presidential records shall be subject to the provisions of [the PRA] in the same manner as Presidential records, " 44 U.S.C. § 2207, the PRA establishes a consultative role for former Vice Presidents so that they, like former Presidents, may identify the interests of the United States at stake in the record disclosure process. And while it is true that only a President or former President is competent to assert executive privilege, a former Vice President may make recommendations to incumbent or former Presidents whether to assert the privilege in particular cases. We see no basis in the text or legislative history of the PRA for concluding that an individual representing a former Vice President in connection with the PRA should be subject to the strictures of section 207 any more than if he were representing a former President.

Finally, we note that to the extent it remains unclear whether section 207's prohibitions apply in this context, the rule of lenity requires that any remaining ambiguity in the statute be construed so as to narrow, not broaden, the statute's prohibitions. That rule "demand[s] resolution of ambiguities in criminal statutes in favor of the defendant." *Hughey v. United States*, 495 U.S. 411, 422 (1990); *see Liparota v. United States*, 471 U.S. 419, 427 (1985) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.") (quoting *Rewis v. United States*, 401 U.S. 807, 812 (1971)); Luttig Memorandum at 5 (invoking the rule of lenity as one justification for a narrow reading of "on behalf of" as used in section 207).

DANIEL L. KOFFSKY
*Acting Assistant Attorney General*
*Office of Legal Counsel*
