PHYSICIANS COMMITTEE FOR
RESPONSIBLE MEDICINE,
Plaintiff,

v.

NATIONAL INSTITUTES OF
HEALTH, Defendant.

Civil Action No. 01–2666 (RBW).

United States District Court,
District of Columbia.

June 29, 2004.

Mindy S. Kursban, Washington, DC, for Plaintiff.

Lisa Barsoomian, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

WALTON, District Judge.

This action concerns a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000), request. Currently before the Court are the parties' renewed cross-motions for summary judgment. Previously, this Court concluded that further information from the defendant agency was required before the Court could intelligently decide whether to order disclosure of the information being sought by the plaintiff. For the reasons set forth below, the plaintiff's renewed motion for summary judgment will be granted and the defendant's renewed motion for summary judgment will be denied without prejudice.

## I. Factual Background

The facts relevant to this action are thoroughly set forth in the Court's February 4, 2004, Memorandum Opinion ("Mem. Op.") and will not be recounted here again. In the Court's prior Memorandum Opinion the plaintiff's motion for summary judgment was granted in part and denied in part, and the defendant's motion for summary judgment was denied without prejudice. *See* Mem. Op. at 1. The Court concluded that further information from the agency was needed before the Court could decide whether to order disclosure of the information responsive to the plaintiff's request. *Id.* For all of the material at issue, the agency stated that it was withholding the information because it "could reveal confidential commercial information obtained from a person[,] citing 5 U.S.C. § 552(b)(4) and 5 U.S.C. § 552(b)(5)" as authority for its position. *Id.* at 8 (citing Defendant's Motion for Summary Judg-

ment ("Def.'s Mot.") Exhibit ("Ex.") 2, Vaughn[1] index). The defendant submitted a *Vaughn* index with its initial motion for summary judgment.[2] However, the Court concluded that "the index failed to adequately specify the exemptions relied on to protect the information." Mem. Op. at 8. Accordingly, the Court permitted the agency to further detail its justifications for withholding the redacted material at issue by providing further affidavits or a newly drafted *Vaughn* index. *Id.* at 10–11. The Court also permitted the defendant to set forth "any arguments regarding why this second submission is adequate pursuant to this Circuit's precedent." *See* Order dated February 4, 2004 at 1, n. 1.

The defendant subsequently submitted Defendant's (1) Supplement in Accordance with the Court's Memorandum Opinion and Order of February 4, 2004, (2) Renewed Motion for Summary Judgment and (3) Protective Motion for an Enlargement of Time to File an Answer to the Second Amended Complaint ("Def.'s Renewed Mot."). Upon reviewing the defendant's renewed motion, the plaintiff's opposition, and the plaintiff's renewed cross-motion for summary judgment, the Court concluded that the second *Vaughn* index again failed to provide sufficient information to permit this Court to make a reasoned judgment as to whether the exemptions have been properly invoked. Consequently, this Court issued an Order requiring the defendant to submit to the Court an unredacted copy of the grant application at issue for its *in camera* review.[3] The defendant has now complied and the Court has conducted its *in camera* review of the unredacted copy of the sixty-six page grant application. Thus, the Court can

---

1. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973) *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

2. *See* Defendant's Motion for Summary Judgment filed on June 11, 2002, Exhibit 2.

3. *See* Order dated April 14, 2004.

now address whether the defendant properly invoked Exemptions 4 and 5 as justification for the redactions on pages 39–46 and 48–51 of Dr. Podell's grant application.[4]

## II. Analysis

The court may grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In resolving a motion for summary judgment, all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment in a FOIA case is appropriate, the Court must conduct a *de novo* review of the record. 5 U.S.C. § 552(a)(4)(B). The defendant agency has the burden of justifying the withholding of requested documents. *Dept. of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Beck v. Dep't of Justice,* 997 F.2d 1489, 1491 (D.C.Cir.1993) (citations omitted).

### A. Exemption 4 of the FOIA

### 1. Trade Secrets

Exemption 4 protects from disclosure trade secrets and commercial or financial information obtained from a person that is privileged or confidential. 5 U.S.C. § 552(b)(4); *Pub. Citizen Health Research Group v. FDA,* 704 F.2d 1280, 1288 (D.C.Cir.1983) (*"Pub. Citizen I"*). The defendant argues that "[t]he information deleted from ... the grant records provided to the [p]laintiff pursuant to Exemption 4 includes patentable, proprietary, and commercial information." Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem.") at 9–10.[5] The defendant further argues that Dr. Podell believes that "the development of the feline model of neuroAIDS and drug abuse is proprietary research, because this model system has the potential for pharmaceutical drug development." Def.'s Mem. at 10. The defendant also contends that "[a] review of Dr. Podell's research design as detailed in his grant application clearly substantiates that it is the end product of both innovation and substantial effort." *Id.* at 11. Moreover, the defendant points out that "[Dr. Podell's] research design properly can be viewed as a commercially valuable plan used in the processing of a trade commodity." *Id.* Accordingly, the defendant concludes that "Exemption 4 material consisting of 'novel protocols or methodology, and research results not yet published' constitutes trade secret material that is properly withheld." *Id.* In the defendant's supplemental filing, the defendant offers

---

4. In the plaintiff's cross-motion for summary judgment it states that the only redacted pages at issue are pages 39–46 and 48–51. Pl.'s Opp. at 1 n. 2. In this regard, the plaintiff represents that as a result of "recent events that have been reported in various newspapers and journals, [p]laintiff is no longer seeking access to any information redacted from pages 28 and 29 of the subject grant application, for which exemption 6 was invoked by NIH...." *Id.*

5. Defendant's (1) Supplement in Accordance with the Court Memorandum Opinion and Order of February 4, 2002(2) Renewed Motion for Summary Judgment and (3) Protective Motion for an Enlargement of Time to File an Answer ("Def.'s Renewed Mot.") filed on February 17, 2004, incorporates by reference Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment filed on June 11, 2002. Def.'s Renewed Mot. at 1.

an additional argument, stating that "all of the information which qualifies as confidential information under Exemption 4 also qualifies as trade secret under Exemption 4." Def.'s Renewed Mot. at 3.

The plaintiff, on the other hand, argues that the defendant has failed to satisfy its burden of showing that Dr. Podell's grant application is a "trade secret." Plaintiff's Cross–Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp.") at 11.[6] The plaintiff states that "Dr. Podell is a noncommercial scientist, affiliated with a public educational institution, whose research was fully funded by U.S. taxpayers...." *Id.* Furthermore, the plaintiff contends that the defendant has not "corroborated with factual evidence, that the redacted information consists of a 'commercially valuable plan, formula, process, or device,' that it is or will be 'used in the making or preparing of trade commodities,' or that it is 'the end product of either innovation or substantial effort.'" *Id.* Moreover, the plaintiff opines that "[j]ust because Dr. Podell 'believes' his research 'has the potential for pharmaceutical drug development,' or that he has been 'studying the feline model of NeuroAIDS for close to 7 years,' or that he has 'a good faith goal of commercialization' does not lead to the conclusion that the redacted information is a 'trade secret.'" *Id.* at 11–12.

The first prong of exemption 4 provides that agencies can withhold information that qualifies as a "trade secret." 5 U.S.C. § 552(b)(4). The definition of trade secret, "solely for the purpose of FOIA Exemption 4, [is] a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *Pub. Citizen I,* 704 F.2d at 1288. This definition "incorporates a direct relationship between the information at issue and the productive process." *Id.* "If the requested documents constitute 'trade secrets,' they are exempt from disclosure, and no further inquiry is necessary." *Id.* at 1286 (citation omitted). It has long been established in this Circuit that "a noncommercial scientist's research design is not literally a trade secret or item of commercial information." *Wash. Research Project, Inc. v. Dep't of Health, Educ. & Welfare,* 504 F.2d 238, 244 (D.C.Cir.1974). In *Wash. Research Project,* the plaintiff sought to compel disclosure of certain information pertaining to 11 specifically identified research projects that had been approved and funded by the National Institute of Mental Health ("NIMH"). *Id.* at 238. "The eleven projects all involved research into the comparative effects of various psychotropic drugs on the behavior of children with certain learning disabilities." *Id.* at 242. The specific information requested by the plaintiff included the initial grant application, site reports and the summary statement concerning the grant application. *Id.* "The initial grant application [included], among other things, [the] identit[y of] the research applicant, any research organization with which [the researcher] may be affiliated, his qualifications and experience, the budget estimates, and the research protocol or design." *Id.* at 241. The NIMH relied upon, *inter alia,*

---

**6.** Plaintiff's Renewed Cross–Motion for Summary Judgment and Opposition to Defendant's Renewed Motion for Summary Judgment and Response to Defendant's Protective Motion for an Enlargement of Time to File an Answer to the Second Amended Complaint ("Pl.'s Renewed Mot.") filed on February 23, 2004, adopts Plaintiff's Cross–Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment filed on July 8, 2002. Pl.'s Renewed Mot. at 1.

"Exemption 4, for trade secrets and commercial or financial information received in confidence," to justify nondisclosure of the information sought in the grant application. *Id.* at 244. "The essence of the argument that research designs submitted in the expectation of confidentiality are trade secrets or commercial information [was] that 'ideas['] are a researcher's 'stock-in-trade.'" *Id.* The *Wash. Research Project* Court explained that their "misappropriation, which, it [was] claimed, would be facilitated by premature disclosure, deprives [the researcher] of the career advancement and attendant material rewards in which the academic and scientific market deals, in much the same way that misappropriation of trade information in the commercial world deprives one of a competitive advantage." *Id.* In rejecting the NIMH's Exemption 4 position, the District of Columbia Court ruled that the grant application in *Wash. Research Project* was not exempt from disclosure. *Id.* at 253 (footnote omitted). The Court reasoned:

> It is clear enough that a noncommercial scientist's research design is not literally a trade secret or item of commercial information, for it defies common sense to pretend that the scientist is engaged in trade or commerce. This is not to say that the scientist may not have a preference for or an interest in nondisclosure of his research design, but only that it is not a trade or commercial interest. To the extent that [the scientist's] interest is founded on professional recognition and reward, it is surely more the interest of an employee than an enterprise, and we are far from persuaded that Congress intended in Exemption 4 to apply terms drawn from the business context to the employment market.

*Id.* at 244–45 (footnotes omitted). "Consequently, [the Court held] that research designs submitted in grant applications are not exempt from disclosure under the [FOIA]." *Id.* And, the Court further held that its "holding extend[ed] to all types of applications—initial, continuation, supplemental, and renewal." *Id.*

 Similarly, "Dr. Podell is a noncommercial research scientist whose research design is subject to disclosure." Plaintiffs Renewed Cross–Motion for Summary Judgment and Opposition to Defendant's Renewed Motion for Summary Judgment and Response to Defendant's Protective Motion for an Enlargement of Time to File an Answer to the Second Amended Complaint. ("Pl.'s Renewed Mot.") at 10. He was not involved in trade or commerce when his research design was developed. Rather, "at the time he submitted his grant application and until he announced his intention to leave Ohio State University ("OSU"), and go into private practice in June of 2002, Dr. Podell was employed as an Associate Professor with OSU's Department of Veterinary Clinical Services, College of Veterinary Medicine." *Id.* The fact that Dr. Podell was engaged in research for the university renders the possibility of a trade interest in his research design remote. *Wash. Research Project,* 504 F.2d at 244 n. 6. Like the Court held in *Wash. Research Project,* it is clear that the research design in the grant application here are not exempt from disclosure under the FOIA as a trade secret. *Id.* at 245.

## 2. Confidential Commercial Information

### a. Commercial Information

Because "the requested documents do not contain trade secrets does not mean that they are ineligible for protection under [Exemption 4 of the] FOIA." *Pub. Citizen I,* 704 F.2d at 1290. "Information other than trade secrets falls within the second prong of the exemption if it is

shown to be (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Id.* (citation omitted). Here, as was the situation in *Pub. Citizen I,* "[s]ince there is no question that the documents at issue were submitted by a person and [there is] no allegation that the information they contain is financial or privileged, [this Court] need ask only whether that information is commercial and, if so, whether it is confidential." *Id.;* Pl.'s Mot. at 13 n. 6.

The defendant submits that "[i]f information relates to business or trade, courts generally will accord it the status of 'commercial' information for purposes of the FOIA." Def.'s Mot. at 11. Furthermore, the defendant contends that "[i]t is not necessary to show that the records reveal basic commercial operations; records are deemed commercial so long as the submitter has a 'commercial interest' in them." *Id.* The defendant simply posits that "[t]he information deleted from ... the grant records provided to the [p]laintiff pursuant to Exemption 4 includes patentable, proprietary, and commercial information." *Id.* at 9–10 (citing Declaration of Darlene Christian dated June 10, 2002 ("Christian Decl.")) ¶ 21. On the other hand, the plaintiff responds that "Dr. Podell's personal hope that he will benefit financially from his research—above and beyond his salary with OSU—does not lead to the conclusion that his research design is commercial." Pl.'s Opp. at 14.

Concluding in *Pub. Citizen I* "that a noncommercial scientist's research design

[is generally not] an item of commercial information, [the Circuit Court noted that it has] recognized the possibility that 'an individual ... engaged in profit-oriented research ... could conceivably be shown to have a commercial or trade interest in his research design.'" 704 F.2d at 1290 (citing *Wash. Research Project,* 504 F.2d at 244 n. 6 ("Only an individual grantee engaged in profit-oriented research, or a non-profit organization that engaged in profit-making ventures based on biomedical research, could conceivably be shown to have a commercial or trade interest in his research design.")) Here, as was the situation with the plaintiff in *Wash. Research Project,* Dr. Podell's "institutional affiliation with [OSU] ... make this possibility extremely remote." *Wash. Research Project,* 504 F.2d at 244 n. 6. Dr. Podell "does not claim that he was a commercial scientist or that he was engaged in profit-oriented research." Pl.'s Opp. at 13. Notably, as the plaintiff points out, "Dr. Podell does not state that he has communicated with any pharmaceutical company concerning the development of drugs based on his research or identify any pharmaceutical company with which he has communicated." [7] *Id.* Rather, Dr. Podell "believes that the development of the feline model of neuroAIDS and drug abuse is proprietary research, because it has the potential for pharmaceutical development." *Id.;* Def.'s Mot. at 10. Despite Dr. Podell's belief in the potential for pharmaceutical development, the defendant has not offered any authority that supports its position. Although *Pub. Citizen I* recognized that "an

7. Dr. Podell provides two examples of efforts he made to commercially develop his model. Affidavit of Michael Podell, MSc, DVM dated April 2, 2002 ("Podell Aff.") at ¶¶ 8(a)–8(b). However, in both situations, Dr. Podell acknowledges that the pursuits did not result in the commercial development of his research. *Id.* In fact, one prospective venture was funded by a government grant, but the funded research was never conducted because the company he was going to perform the research with merged with a larger entity which nullified the grant. *Id.* ¶ 8(a). The other endeavor involved a pilot study that Dr. Podell performed with another university professor. However, a grant was not submitted due to a change in focus in the laboratory [of the other professor]. *Id.* ¶ 8(b).

individual … engaged in profit-oriented research … [can] be shown to have a commercial or trade interest in his research design[,]" 704 F.2d at 1290, Dr. Podell's situation is distinguishable from the defendant in *Pub. Citizen I*. In *Pub. Citizen I* "various manufacturers of intraocular lenses ("IOLs")" submitted data to the Food and Drug Administration ("FDA") as part of the agency's investigation of IOLs. *Id.* at 1282. "[T]he devices had been widely used for a number of years, [but] the FDA concluded that further study was necessary to confirm their effectiveness and safety." *Id.* at 1283. Consequently, the manufacturers were still able to market the devices, but were required by the FDA to submit voluminous data with information concerning the manufacturers' prior experience with IOLs and detailed reports on adverse reactions and other complications resulting from their use. *Id.* The Court in *Pub. Citizen I* determined that "[b]ecause the documentation of the health and safety experience of [the manufacturers] products [were] instrumental in gaining marketing approval for their products, it seem[ed] clear that the manufacturers of IOLs ha[d] a commercial interest in the requested information." *Id.* at 1290.

Here, Dr. Podell is a noncommercial scientist who has never manufactured or marketed any drug relating to neuroAIDS that was produced as a result of his research. Moreover, none of Dr. Podell's research results have been marketed or used and subsequently subjected to additional study.[8] This case is therefore more analogous to the situation in *Wash. Re-search Project,* where the court found that the "noncommercial scientist's research design [was] … not [an] *item of commercial information."* 504 F.2d at 244 (emphasis added). Thus, this court concludes as a matter of law, that the information contained on pages 39–46 and 48–51 does not amount to commercial information.

### b. Confidential Information

In support of its claim that the withheld information is confidential, the defendant asserts that "disclosure would cause substantial harm to Dr. Podell's competitive position." Def.'s Mot. at 15. Specifically, the defendant claims that Dr. Podell would sustain "potential commercial harm or competitive disadvantage if the information is released in its entirety, as several laboratories are currently working on similar projects in the area of drug abuse and HIV infection." Def.'s Mot. at 13 (citing Affidavit of Michael Podell, MSc, DVM dated April 2, 2002) ¶¶ 9–10. Furthermore, the defendant argues that "disclosure may affect the grantee[']s ability to publish his research in journals whose policies dictate that they will not publish research that previously has been disclosed." Def.'s Mot. at 13. The plaintiff contends that Dr. Podell's assertions "do not even come close to meeting the government's burden of showing in detail how release of the redacted information is likely to cause substantial harm to Dr. Podell." Pl.'s Mot. 15. The plaintiff further posits that the defendant has "wholly failed to meet its burden to demonstrate with specific and direct evidence that the redacted information is confidential because its disclosure

---

8. Notably, the defendant contends that only the "grantee OSU Research Foundation owns the research and '[r]ights to inventions vest with the grantee organization.'" Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross–Motion for Summary Judgment ("Pl.'s Reply") at 7 (citing Defendant's Reply in Sup- port of its Motion for Summary Judgment and Opposition to Plaintiff's Cross–Motion for Summary Judgement ("Def.'s Reply") at 5). Curiously, this argument is contrary to the defendant's position that Dr. Podell has a proprietary or commercial interest in the re- dacted information.

will result in competitive harm to Dr. Podell." *Id.* at 16 (footnote omitted).

Commercial information is confidential under Exemption 4 if its disclosure would either "(1) . . . impair the Government's ability to obtain necessary information in the future; or (2) . . . cause substantial harm to the competitive position of the person from whom the information was obtained." *Pub. Citizen I,* 704 F.2d at 1290–1291 (quoting *Nat'l Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 770 (D.C.Cir.1974)) ("*Nat'l Parks I*"). "Under the second prong of this test-the only one at issue here—the court need not conduct a sophisticated economic analysis of the likely effects of disclosure."[9] *Id.* at 1291 (citing *Nat'l Parks & Conservation Ass'n v. Kleppe,* 547 F.2d 673, 681 (D.C.Cir. 1976)) Moreover, the second prong of exemption 4 is generally intended to encourage persons to provide confidential information to the government on a voluntary basis and to protect persons who submit financial or competitive data from the competitive disadvantage that would result from disclosure. *Nat'l Parks I,* 498 F.2d at 768. "Conclusory and generalized allegations of substantial competitive harm, of course, are unacceptable and cannot support an agency's decision to withhold requested documents." *Pub. Citizen I,* 704 F.2d at 1291 (citations omitted). On the other hand, "the parties opposing disclosure need not 'show actual competitive harm'; evidence revealing '[a]ctual competition and the likelihood of substantial competitive injury' is sufficient to bring commercial information within the realm of confidentiality." *Id.* (citation and footnote omitted).

■ "[T]he important point for competitive harm in the FOIA context . . . is that it be limited to harm flowing from the affirmative use of proprietary information by competitors." *Id.* at 1291 n. 30. In this case, Dr. Podell has submitted an affidavit stating that "there is potential commercial harm or competitive disadvantage if the information is released in its entirety, as several laboratories are currently working on similar projects in the area of drug abuse and HIV infection." Def.'s Mot. at 13 & Exhibit 1 Attachment G (Affidavit of Michael Podell, MSc, DVM dated April 2, 2002) ("Podell Aff.") ¶¶ 9–10. Furthermore, defendant argues that "disclosure may affect the grantees's ability to publish his research in journals whose policies dictate that they will not publish research that previously had been disclosed." *Id.* These "[c]onclusory and generalized allegations [alone do not establish] substantial competitive harm," and thus are "unacceptable and cannot support the defendant's decision to withhold requested documents." *Pub. Citizen I,* 704 F.2d at 1291. Specifically, the defendant has failed to show that the competitive harm that Dr. Podell alleges is "harm flowing from the affirmative use of proprietary information by competitors." *Id.* at 1291 n. 30 (emphasis omitted). Dr. Podell's affidavit lists three individuals and their associated laboratories as examples of work being performed on similar projects in the area of drug abuse and HIV infections." Def.'s Mot., Podell Aff. ¶ 9. However, this representation falls short of harm flowing from the affirmative use of proprietary information by competitors. For example, in *Pub. Citizen I,* the Court found that competitive harm had been demonstrated where "the corporate [defendants] submitted a

---

9. The defendant does not allege that releasing the information would impair its ability to obtain necessary information in the future. Thus, the only issue remaining is whether disclosure would cause substantial harm to the competitive position of the person from whom the information was obtained. *Pub. Citizen I,* 704 F.2d at 1290–1291.

lengthy expert report and numerous depositions documenting the competitive injury that disclosure would cause." *Pub. Citizen I*, 704 F.2d at 1291. Here, nothing of that nature has been submitted by the defendant or Dr. Podell. Because defendants have not demonstrated substantial harm to Dr. Podell flowing from the affirmative use of proprietary information, this Court concludes that the information contained on pages 39–46 and 48–51 is not confidential information protected from disclosure by Exemption 4 of the FOIA.

## B. Exemption 5 of the FOIA

The defendant also argues that it properly invoked FOIA Exemption 5 as the basis for withholding the information at issue in this case. The defendant is asserting Exemption 5 in conjunction with Exemption 4 as grounds for the non-disclosure. Def.'s Mot. at 14. The defendant further explains that "the type of information sought by the plaintiff [is] shielded under Exemption 5 as confidential research information, and thus the material is not routinely discoverable." *Id.* (citing Christian Decl. ¶ 22); *Burka v. United States Dep't of Health & Human Servs.*, 87 F.3d 508 (D.C.Cir.1996). The defendant further states that "[d]isclosure of this information may limit the pool of grant applicants, because some grant applicants appreciably would not want the fruits of their research disclosed under the FOIA." Def.'s Mot. at 14 (citing Christian Decl. ¶ 22). The defendant posits that its "revised *Vaughn* index explains why the redacted information at issue here would fall within Exemption 5's protection." Def.'s Renewed Mot. at 4. Specifically, the defendant notes that "the grant application was created through agency initiative, *i.e.* an RFA (request for application), to obtain scientific expertise that would assist the agency in furthering its business interest of better understanding AIDS and promoting the health of people (which satisfies the Exemption 5 threshold requirement of an 'inter-agency' or intra-agency document)." *Id.* In support of this argument, the defendant states that "[t]he document at issue need not be created within the agency. A document can be created outside the agency and still be an 'inter-agency or intra-agency' document for Exemption 5 purposes." *Id.* (citing *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 360, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979)) (noting that *Merrill* recognized that "Exemption 5 incorporates a qualified privilege for confidential commercial information, at least to the extent that this information is generated by the Government itself in the process leading up to awarding a contract.")[10] *Id.* The defendant further states that "[r]egardless of the document's origin, the focus is on the status of the document in furtherance of the agency's interest and business." *Id.* at 5. The defendant suggests that "a grant applicant is more like a consultant whose work can be deemed to satisfy the 'inter-agency or intra-agency' requirement[.]" *Id.* The defendant reasons that since the NIH "was undertaking a massive research project to better understand AIDS and find a cure for it[,] ... enlisted the assistance of the scientific community and did so when it

10. *Merrill* explicitly recognized the need to avoid early disclosure of information that might prejudice the government's bargaining position in business transactions stating that "a Government agency cannot always operate effectively if it is required to disclose documents or information which it has received or generated *before it completes the process of* *awarding a contract* or issuing an order, decision or regulation." 443 U.S. at 359, 99 S.Ct. 2800 (emphasis added). Here, the information at issue was requested *after* the grant application was submitted and Dr. Podell was awarded the grant. Thus, the Court fails to see how *Merrill* supports the defendant's position.

issued the RFA to which Dr. Podell responded[,] . . . [and that] the overall purpose of the RFA is research that will lead to a better understanding of the effects of HIV/AIDS and drugs of abuse on behavioral, cognitive, and brain function, which will aid in the development and refinement of treatment and prevention," that the grant application at issue meets the threshold requirement of Exemption 5. *Id.* The defendant cites *Ryan v. Department of Justice*, 617 F.2d 781 (D.C.Cir.1980) and *Public Citizen, Inc. v. Department of Justice*, 111 F.3d 168 (D.C.Cir.1997) ("*Pub. Citizen II*") as support for its position.

On the other hand, the plaintiff accurately points out that "Dr. Podell was not acting as a consultant to the government when he submitted his grant application." Pl.'s Renewed Mot. at 16. Moreover, "[Dr. Podell] was not paid for the work done in submitting the grant application and the information set forth in the grant application does nothing to help the government achieve its policy objectives." *Id.*

■ Exemption 5 provides that the "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" are not subject to disclosure. 5 U.S.C. § 552(b)(5). "To qualify, a document must thus satisfy two conditions: (1) its source must be a Government agency, and (2) it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001). The threshold issue that must be addressed when Exemption 5 is asserted is whether the records in question qualify as "inter-agency or intra-agency memorand[a]." *Judicial Watch, Inc. v. United States Dep't of Commerce*, 90 F.Supp.2d 9, 13 (D.D.C.

2000). "With respect to the secondary consideration under Exemption 5—whether such materials would not be 'available by law in litigation with the agency,'" *id.*, "the parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery." *Burka*, 87 F.3d at 516. Thus, if a document requested pursuant to the FOIA would normally be disclosed in civil discovery, it must also be disclosed under the FOIA. Conversely, information that is routinely not subject to disclosure in the civil discovery process is exempt from disclosure under Exemption 5. *Id.* Moreover, "to justify nondisclosure under Exemption 5, an agency must show that the type of material it seeks to withhold is generally protected in civil discovery for reasons similar to those asserted by the agency in the FOIA context." *Id.* at 517.

■ Here, the defendant has failed to satisfy the threshold Exemption 5 question, having failed to show that the documents in question qualify as "inter-agency or intra-agency memorand[a]." *Judicial Watch*, 90 F.Supp.2d at 13. Although the defendant posits the tenuous argument that "[a] grant applicant is more like a consultant whose work can be deemed to satisfy the inter-agency or intra-agency requirement," Def.'s Renewed Mot. at 7, the facts here do not support defendant's position. And the cases cited in support of defendant's argument, *Ryan* and *Pub. Citizen II*, are distinguishable from this case. The documents at issue in both of those cases were considered to be intra-agency records because the documents prepared by the outside consultants essentially played the same role in the agency's deliberative process as documents that would be prepared by the agency's own personnel. *Ryan*, 617 F.2d at 789; *Pub. Citizen II*, 111 F.3d at 169. The *Ryan* case involved a questionnaire that was sent by

the Attorney General to all United States Senators inquiring about their procedures for selecting and recommending potential nominees for federal district court judgeships. 617 F.2d 781, 784 (D.C.Cir.1979). The *Ryan* Court found that "[w]hen an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency ..., it [is] entirely reasonable to deem the resulting document to be an 'intra-agency' memorandum for purposes of determining the applicability of Exemption 5." *Id.* at 789. The Court noted that the exemption was created to protect the deliberative process of the government, by ensuring that persons in an advisory role would be able to express their opinions freely to agency decision-makers without fear of publicity. *Id.* The Court reasoned:

> In the course of its day-to-day activities, an agency often needs to rely on the opinions and recommendations of temporary consultants, as its own employees. Such consultants are an integral part of its deliberative process; to conduct this process in Pub. view would inhibit frank discussion of policy matters and likely impair the quality of decisions.

*Id.* at 789–790. Here, Dr. Podell's was not a temporary consultant whose research was an integral part of the deliberative process of the defendant. Put simply, Dr. Podell was not acting on behalf of the government when he received the grant and conducted his research. *See Forsham v. Harris*, 445 U.S. 169, 180, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980) (stating that "[g]rants of federal funds generally do not create a partnership or joint venture with the recipient, nor do they serve to convert the acts of the recipient from private acts to governmental acts ..."). In *Pub. Citizen II*, the documents at issue were communications between the National Archives and Records Administration and the Department of Justice and former

Presidents Ronald Reagan and George Bush. 111 F.3d at 169. The Court in *Pub. Citizen II* ruled that "records of communications between an agency and outside consultants qualify as 'intra-agency' for purposes of Exemption 5 if they have been 'created for the purpose of aiding the agency's deliberative process.'" *Id.* (citations omitted).

"Typically courts ... have held that [Exemption 5] extends to communications between Government agencies and outside consultants hired by them." *Klamath*, 532 U.S. at 10, 121 S.Ct. 1060. "In such cases, the records submitted by outside consultants played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done." *Id.* Significantly, "the fact about the consultant that is constant ... is that the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it." *Id.* at 10–11, 121 S.Ct. 1060. Here, Dr. Podell's role was not tantamount to that of a consultant, such that he was acting as agency personnel. Rather, Dr. Podell was engaged in a personal pursuit. He has admitted that the information submitted in his RFA contains patentable, proprietary, and commercial information. Def.'s Mem. at 9–10. Additionally, the defendant asserts that Dr. Podell's "research design can be properly viewed as a commercially valuable plan used in the processing of a trade commodity." *Id.* at 11. Thus, Dr. Podell's hope of marketing the results of his research cannot be considered an integral part of the agency's deliberative process, but instead must be viewed as an effort taken for his own self-interest. This fact alone distinguishes Dr. Podell's initial grant application from that of a consultant. *Klamath*, 532 U.S. at 12, 121 S.Ct. 1060. The distinction is even more evident in

that Dr. Podell was in competition with other grant applicants and had a self-interest in being awarded the grant. *Id.* Thus, even if communications come from paid consultants, which can qualify the communications as intra-agency in nature, they are not entitled to Exemption 5 protection when they come "from an interested party seeking a Government benefit at the expense of other applicants." *Id.* at 12 n. 4, 121 S.Ct. 1060. Therefore, the Court concludes that the defendant has not carried its burden with respect to proving Exemption 5's applicability, having failed to establish the threshold requirement that the redacted information in Dr. Podell's grant application on pages 39–46 and 48–51 qualify as "inter-agency or intra-agency memorand[a]." *Judicial Watch,* 90 F.Supp.2d at 13. And "[b]ecause [the Court] concludes that [the redacted information in Dr. Podell's grant application] do not meet this threshold condition, [the Court] need not reach step two of the Exemption 5 analysis and [i]nquire whether the [redacted information] would normally be discoverable in civil litigation." *Klamath,* 532 U.S. at 12, 121 S.Ct. 1060 (citing *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 799, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984)).

Accordingly, for all of the reasons stated above, the defendant's motion for summary judgment is denied and the plaintiff's motion for summary judgment is granted.[11]

---

**11.** An Order consistent with this Memorandum Opinion will be issued contemporaneously herewith.